## LAKE ERIE & W. R. CO. v. BOARD OF COM'RS OF SENECA COUNTY et al.

(Circuit Court, N. D. Ohio, W. D.    October 24, 1893.)

1. EMINENT DOMAIN—SECOND APPROPRIATION.
   In Ohio the rule is well established that a second appropriation of lands formerly appropriated to a public use cannot be made when the second appropriation is inconsistent with the first, and tends to deprive the corporation first acquiring such public use from the full and free enjoyment thereof.

2. SAME—DITCHES AND DRAINS—RAILROAD RIGHT OF WAY—POWER OF COUNTY COMMISSIONERS.
   County commissioners in Ohio have no power, under the statutes authorizing them, under certain conditions, to appropriate lands for public ditches or drains, to construct a large ditch for a long distance upon a railroad right of way in such manner as would prevent the railroad company from constructing a side or double track, or from using the ground for other purposes essential to the full enjoyment of its corporate powers.

In Equity.    Bill by the Lake Erie & Western Railroad Company against the board of commissioners of Seneca county, Ohio, William H. Schlosser, auditor, and William Collins, to enjoin them from constructing a ditch on complainant's right of way.    On motion to dissolve a temporary injunction.    Denied.

J. M. Lemmon. N. E. Hackedorn, and J. B. Cockran, for complainant.

George E. Schroth, for defendants.

RICKS, District Judge.    This case is now before the court upon a motion to dissolve the temporary restraining order heretofore allowed upon the filing of the complainant's bill, restraining the commissioners of Seneca county from constructing a ditch upon the right of way of the complainant near the city of Fostoria.    The complainant alleges in its bill that it is a corporation created by the laws of the state of Illinois; that it operates a railroad between the states of Ohio, Indiana, and Illinois, and is engaged in interstate traffic, and the transportation of the mails of the United States, and passengers and merchandise.    It alleges that the city of Fostoria is a flourishing city, for which and from which it transports a large amount of freight and merchandise.    It further alleges that near said place, upon its roadway, and within 12 feet of its main track, the defendants propose to deepen and widen a ditch which has already been in existence along said right of way for some time; that the defendants propose to make said ditch 1,150 feet long, chiefly on the southerly side of their right of way, and to be from 15 to 17 feet wide at the top, and from 5 to 7 feet deep; that the construction of said ditch so near the main track would endanger the permanency of its roadbed, increase the dangers of accident, and, in cases of the derailment of a train, make the loss of life and injury to property much greater than it otherwise would be.    It avers further that the enlargement of said ditch

v.57 F.no.9—60

would make it necessary to remove the telegraph poles along its right of way, would make the maintenance and cleaning of said ditch an annual tax upon the complainant, and otherwise impair the stability of its roadbed and superstructure, and greatly increase the risks and hazards of operating its road.

Upon the filing of this bill a temporary restraining order was allowed. In due course of time the defendants filed an answer denying that the enlargement of said ditch would imperil the stability of the complainant's right of way or increase the perils attending the operation of its railroad. Said answer further avers that, owing to the peculiar character of the soil at the place where said ditch is to be constructed, the enlargement and deepening of the same would not make any impression upon the remaining part of the complainant's right of way. The answer further claims that a ditch of considerable size has been in existence along said right of way where the proposed ditch is to be constructed for a great many years. Affidavits in support of the averments of the bill and the answer have been filed by the respective parties.

From the averments in the pleadings, and from the affidavits filed, it seems to me very clear that the enlargement of the ditch as now proposed by the county commissioners would be a substantial invasion of the complainant's right to the public use of its property, which it acquired by virtue of condemnation proceedings taken under the statutes of the state of Ohio. The state, by its legislative acts and policy, has invested railroad corporations with the right of eminent domain, and authorized them to acquire lands for public uses against the will of the owners. No exceptions are made, and the purpose of the legislation is unmistakable. The land so condemned and appropriated is impressed with a public use and trust. It cannot be appropriated to another public use, and to defeat the original grant, unless the sovereign power of the state has expressly delegated that power to some public corporation. If we look to the statutes of the state, we find authority invested in county commissioners and township trustees, under certain conditions, upon certain terms, and after certain procedure, to appropriate lands for public ditches or drains. But this authority is limited. While the power to use lands appropriated for railroad purposes for the construction of county or township ditches is given to county commissioners and township trustees, yet the grant is not express or broad enough to show that the legislature ever contemplated that such second appropriation should be made under circumstances which would deprive the railroads of the right to use such lands for railroad purposes. It was never intended to deprive such corporations of the right or power to use the lands condemned and paid for by them for the public uses for which they were seized and appropriated. It was not intended to nullify the original grant by conferring upon a second public corporation the power to appropriate such lands to another and different use, without the consent of the original appropriator. The court of appeals of the state of New York (In re New York, L. & W. R. Co., 99 N. Y. 23, 1 N. E. Rep. 32) says:

'The general authority conferred upon railroad corporations to acquire lands against the will of the owner is broad and comprehensive. In terms, it covers all and excepts none. But because it could not be contended that the state, having authorized one taking, whereby the lands became impressed, under authority of the sovereign, with a public use, meant to nullify its own grant by authority to another corporation to take them again for another public use, unless it so specifically decreed. Were the rule otherwise, this evil would result: a corporation (No. 1) having the right of eminent domain takes land from a similar corporation, (No. 2,) having the same right; No. 2 thereupon proceeds again to condemn it for its own use, and No. 1 retaliates, and so the absurd process goes on."

But defendants' counsel call the attention of the court to several cases in Ohio where it is claimed the right to appropriate railroad lands for other public uses is upheld. The most important case to which reference is thus made is in 48 Ohio St., 273, 27 N. E. Rep. 464, the case of Cincinnati, S. & C. R. Co. *v.* Village of Belle Centre. In that case the land sought to be appropriated by the village was a lot acquired by the railroad company for depot purposes. The proof on the trial of the condemnation proceedings in the probate court failed to show that the property wanted by the village for a street was used or needed by the railroad company for public uses. The appropriation was therefore directed to land not a part of the railroad right of way, not necessary for tracks or side tracks, and not used or needed for the safe and necessary operation of the road. The supreme court put the power of the village to appropriate it upon the fact that the public use for which it was wanted was not inconsistent with that to which it was first dedicated. The court, referring to cases in which a second appropriation by a municipal corporation can be sustained, distinctly says:

"The criterion in all cases being whether such appropriation is reasonably consistent with the use to which the property has been subjected by the railroad company, and whether it is so consistent may in each case become a question of fact."

In the case of Little Miami, C. & X. R. Co. v. City of Dayton, 23 Ohio St. 510, the supreme court said:

"Land appropriated to a particular public use is not thereby withdrawn from the liability to be taken by legislative authority in the exercise of the power of eminent domain for another public use; but a subsequent grant cannot be construed to authorize subversion of the former use, unless such appears, by express words or by necessary implication, to be the legislative intent."

In the case cited in 19 Ohio St. (Iron R. Co. v. City of Ironton, p. 299) the only question decided by the court was that the Iron Railroad had no more right to claim ground along the river front in Ironton for wharf purposes than any other appropriator; that it was not authorized to hold wharf property for its exclusive use, as it was its right of way; and that, therefore, the city might appropriate to wharf purposes land held by the railroad the same as though held by private persons.

It will be seen, therefore, from these authorities, that in Ohio the doctrine is well established that a second appropriation of lands formerly appropriated to public use cannot be made when the

second appropriation is inconsistent with the first, and tends to deprive the corporation first acquiring such public use from the full and free enjoyment thereof.   Conceding that legislative power has conferred upon municipal corporations the right to extend streets across a railroad's right of way, conceding that it has extended to county commissioners the right to extend highway crossings over a railroad's right of way, conceding that it has conferred the same authority upon township trustees, it must never-theless also be conceded that in neither of these cases can the power conferred be exercised so as to deprive the railroad company of the full and free use of the property first condemned by it for railroad purposes.

Under the facts in this case it is very clear that the ditch which it is now proposed to construct upon the right of way for 1,150 feet near the city of Fostoria cannot be placed there without a substantial impairment of the complainant's roadbed.   A ditch so constructed would deprive the complainant company of the power to build a side track over the same ground, would prevent it from constructing a double track along the same ground, would prevent it from using said ground for other purposes essential to the full enjoyment of its corporate powers.   I do not think it is necessary at this stage of the case for me to determine whether or not the construction of said ditch would increase the hazard of operating the complainant's road.   There is strong testimony tending to support such a claim.   It is sufficient, however, for me for the present to find that the construction of said ditch would deprive the complainant of the full enjoyment of the lands which it has appropriated under the laws of the state for public purposes, not only for present use, but for future probable use, and that, therefore, it ought not to be permitted.

The motion to dissolve the temporary injunction will be denied.