[No. 4236.]

The Denver Power and Irrigation Company v. The Denver and Rio Grande Railroad Company et al.

**1. Eminent Domain—Reservoirs—Constitution.**

Under section 14, article 2, of the constitution authorizing the taking of private property for reservoirs "for agricultural, mining, milling, domestic or sanitary purposes" a company incorporated to procure reservoirs "for the storage and use of water for power, irrigation, mining, milling, manufacturing and other beneficial uses and purposes" may condemn property for its reservoir. The term "milling" in the constitution is synonymous with "manufacturing," the word "power" as used in the articles of incorporation means the product of a manufacturing establishment, and the phrase "other beneficial uses and purposes" will be held to refer to other uses expressed in the constitution.

**2. Eminent Domain—Reservoirs—Forest Reserve.**

In a proceeding to condemn a reservoir site, the fact that the site sought to be condemned is located on a forest reserve of the United States and that petitioner has not complied with the law relative to the location of reservoir sites on such reserves is immaterial to respondents and cannot be urged as a defense to the proceeding.

### 3. Eminent Domain—Public Use.

Property already devoted to a public use cannot be taken for another in such manner or to such an extent that the use to which it is devoted will be wholly defeated or superseded except where a public exigency requires that it be taken.

### 4. Same—Reservoirs—Railway Right of Way.

Land already appropriated as a right of way by a railroad company cannot be taken for a reservoir site to an extent which would totally deprive the railroad company of its use unless a public necessity requires that it be taken, and the comparative convenience, benefits, or costs to the respective parties cannot be considered.

### 5. Same.

In a proceeding to condemn land for a reservoir site where the petition alleges that one of the defendants, a railroad company, owns a right of way over the land sought to be condemned and that other railroad companies made defendants claim an interest in the property the nature and extent of which is unknown, petitioner cannot afterwards in the proceeding raise the objection that respondents have no interest in the land because such respondents have violated the constitution and laws of the state with reference to the consolidation of parallel and competing lines of railroads or because they have failed to comply with the requirements of the laws of the state and the United States necessary to secure and hold such right of way.

### 6. Eminent Domain—Distribution of Damages.

In a condemnation proceeding where there are several claimants to the property, the petitioner has no interest in the question as to which claimant may be the owner, further than to bring before the court those claiming an interest. When the damages are assessed for the taking of the property it should be paid into court and the claimants can litigate the right thereto amongst themselves.

### 7. Eminent Domain—Intervention.

In a condemnation proceeding only parties who have an interest in the subject matter of dispute between litigants are entitled to intervene.

### 8. Same—Railroads—Franchises—Quo Warranto.

In a proceeding to condemn a railroad right of way for a reservoir site, the attorney general has no right to intervene in the name of the people to determine whether or not the railroad company has forfeited its franchise and right to hold such right of way and thus change the condemnation proceeding to that of quo warranto.

**9. Eminent Domain—Public Use—Railroad Right of Way—Reservoirs.**

In order that a railroad company may hold land claimed as a right of way as against a water company seeking to condemn it for reservoir site, it must appear that the right of way is actually devoted to railroad purposes or that it is the bona fide purpose of the railroad company to construct and maintain a railroad over the right of way. The mere laying of ties and rails on such right of way without a bona fide intention of using it for railroad purposes is insufficient.

**10. Eminent Domain—Reservoirs—Private Corporations.**

Private corporations may condemn land for reservoir sites for agricultural, mining, milling, domestic or sanitary purposes.

**11. Eminent Domain—Public Use—Public Corporations.**

Property held by a public corporation, which is not devoted to or needed for public use is private property and may be condemned for a reservoir site.

**12. Eminent Domain—Final Judgment—Appellate Practice.**

In a condemnation proceeding a judgment which denied petitioner's right to condemn, determined upon the issues made by the pleadings and the testimony submitted by the respective parties at the time a motion by petitioner for the appointment of commissioners, and one by respondents to dismiss was heard, effectually settled the rights of the respective parties and was such final judgment as will be reviewed by the appellate court.

## *Error to the District Court of Douglas County.*

Plaintiff in error, as petitioner, commenced an action in the district court to condemn a piece of land for a reservoir site. To this proceeding defendants in error were made respondents. On the trial of the issues made by the pleadings, the court rendered judgment denying the right of petitioner to condemn the premises sought to be taken. From this judgment, petitioner brings the case here for review on error. Since the case was brought here, the people, through the attorney general, have filed a petition in intervention, and ask to intervene, which petition certain of the respondents move to strike from the files. These same respondents also move to dismiss the writ of error. The necessary facts and state-

ments in the pleadings for an understanding of the questions discussed and determined appear in the opinion. For convenience, when named, the petitioner will be referred to as the Power Company, and the respondents, The Denver & Rio Grande Railroad Company, as the Rio Grande Company; The Denver Leadville & Gunnison Railway Company as the Leadville Company; The Denver, Cripple Creek & Southwestern Railroad Company as the Cripple Creek Company, and The Colorado & Southern Railway Company as the Colorado Southern. The only respondents appearing here are the Leadville, Cripple Creek, and Colorado Southern companies.

Messrs. TELLER & ORAHOOD, Mr. CLAYTON C. DORSEY and Mr. NORMAN M. CAMPBELL, for plaintiff in error.

Messrs. DINES & WHITTED, for defendants in error.

Mr. JUSTICE GABBERT delivered the opinion of the court.

Counsel for respondents present two propositions which go directly to the authority of petitioner to condemn the lands in question, and we shall, therefore, consider these matters first.

The power of the petitioner to condemn is challenged upon the ground that under the constitution of the state it can not take land for a reservoir site for all the purposes mentioned in its articles of incorporation, and the joinder of non-permissible purposes with those which are permissible, deprives petitioner of the right to condemn for any. Sec. 14, art. 2 of the constitution provides: ''That private property shall not be taken for private use   *   *   * except for reservoirs   *   *   *  for agricultural, mining, milling, domestic, or sanitary purposes.''

The articles of incorporation of petitioner recite that its objects and purposes are "to procure  *  *  * reservoirs  *  *  *  for the storage and use of water for power, irrigation, mining, milling, manufacturing, and other beneficial uses and purposes." According to the petition, petitioner seeks to condemn for the purposes mentioned in its articles of incorporation, and it is therefore urged that petitioner is seeking to utilize the proposed reservoir site for "power,""manufacturing"and"other beneficial uses and purposes" which, it is said, are not uses recognized by the constitution for which a reservoir site may be condemned. This view is not tenable. The constitution does provide that a reservoir site may be taken for milling purposes, and the term "milling" as employed in the constitution, is synonymous with "manufacturing"—*Lamborn v. Bell*, 18 Colo., 346; the word "power" as used in the articles of incorporation and petition, clearly means a manufactured product—the produce of a manufacturing establishment. No use is suggested which under "other beneficial uses and purposes" would not directly or indirectly be associated or connected with one or more of the uses for which a reservoir site may be taken, according to the express terms of the provisions of the constitution under consideration. We conclude, therefore, that no purposes are claimed different from those embraced within the provisions of the constitution, if the purposes therein mentioned had been specified in the articles of incorporation, and nothing more.

The next point urged against the authority of petitioner to condemn is based upon the ground that the reservoir site is within the limits of a forest reserve of the United States, and it is, therefore, urged that in the absence of a showing by petitioner of a compliance with the law relative to the location of

reservoir sites on such reserves, it can not take the lands in question. This proposition is not unlike the one raised in *U. P. Ry. Co. v. Colo. Postal T.-C. Co., ante p.* 133, where it was urged that the Telegraph Company could not condemn a right of way over lands extending through incorporated towns in the absence of a showing that it had obtained leave from the municipal authorities to erect its line along the streets and alleys of such towns. It was decided that the question was one which did not concern the railroad company. The fact that petitioner may not have leave from the government to maintain a reservoir site upon a forest reserve, if such leave is necessary, or has not complied with the law in this respect, if such is the case, may affect the ability of petitioner to enjoy the lands sought to be condemned, but does not affect its *power* to condemn such lands as against the respondents. They can not raise a question which does not concern them, or which rests solely between the petitioner and the government.

A further ground is also urged on behalf of respondents against the authority of petitioner to exercise the right of eminent domain, which will be noticed later.

We shall now consider the propositions urged on behalf of counsel for petitioner, in support of their contention that the judgment of the court below should be reversed.

The trial court determined that property held for a public use could not be taken under the exercise of the power of eminent domain when such taking entirely prevented its use for the public purposes to which it was devoted. This conclusion, it is claimed, is erroneous, for the reason, as we understand the argument of counsel, that corporate property devoted to a public use is subject to condemnation the same as private property of individuals, and may be

taken for a different public use, even though such taking would render it impossible for the party from whom taken to in any manner utilize it for the purpose to which it was devoted, provided the requisite degree of necessity for the second taking be shown to exist, or where the party from whom taken can secure other property equally available. In support of this proposition we are referred to sec. 8, art. 15 of the constitution, which provides ''The right of eminent domain shall never be abridged' nor so construed as to prevent the general assembly from taking the property and franchises of incorporated companies and subjecting them to public use the same as the property of individuals.'' It is unnecessary to attempt an analysis of this constitutional provision, whether or not it is self-executing, or the legislature has provided laws by which its provisions may be enforced, further than to say that neither the constitutional provision referred to nor any statute to which our attention has been directed, changes or modifies the general rule, that property already devoted to a public use can not be taken for another in such manner or to such an extent that the use to which it is devoted' will be wholly defeated, or superseded, unless the power to so take be granted expressly or by necessary implication.—*Cin. S. & C. R. Co. v. Belle Centre,* 47 A. & E. R. R. Cases, 72, 48 Ohio St., 273; *City v. Jeffersonville M. & I. R. Co.,* 126 Ind., 466; *Lake Erie & W. R. R. Co..v. Board of Comrs.,* 57 Fed., 945; *Little Miami & C. & X. R. Co. v. Dayton,* 23 Ohio St., 510—except it may be in cases where a public exigency requires that it be taken. If the property sought to be condemned is already devoted to railroad purposes, then the facts which we consider as established by the record, or as claimed to exist by counsel, do not authorize the petitioner to take the property of the respondents. As we understand the

record, the property to be condemned is claimed as a right of way for railroad purposes by the Colorado Southern and Rio Grande companies, or at least, wholly includes lands which these companies claim for such purposes; and that it is the intention of petitioner to utilize these lands by the construction and maintenance of a dam and reservoir which will submerge them for a distance of seven or eight miles. It is claimed that the railroad companies can build a line of railroad around the proposed reservoir site at some additional cost which will be equally as good as one constructed over their present rights of way; that the necessity of the reservoir company to such site is absolute, because it must take the bed of the stream or abandon its enterprise. Conceding that petitioner has the right under the laws of the state to ordinarily exercise the right of eminent domain, in acquiring property held for railroad purposes, no statute is pointed out which would authorize it to take such property to an extent which would totally deprive the railroad companies of their use. No public exigency is shown to exist of a character which demands the location of a reservoir site at the point selected by petitioner. It may be true, that the site thus selected is convenient, or it may even be true that it is the only available one on the stream, but that is a matter which affects the rights of petitioner, and not the public. It is not claimed that in order to serve the needs of any community, it is necessary that the reservoir site be located at this particular point, or, in fact, at any. While it may be true that the enterprise of petitioner is public in its nature, the public necessity which must be shown to exist before it can entirely deprive respondents of their lands, is the necessity of the public to be in some manner served by the projected enterprise and not the necessities of the projector, in order to make such enterprise a success.

So far as the authority to exercise the right of eminent domain for public uses is concerned, it is based upon the theory that the property granted the subject is upon the condition that it may be retaken to serve the necessities of the sovereign power.—Mills' Eminent Domain, § 1; *United States v. Jones,* 109 U. S., 513—and to this end agencies created by the state the purpose of which is to serve the public, may exercise this right. Where, however, land is already devoted to a public use, it would be wholly unreasonable to permit it to be taken for another public use which would nullify and defeat the one to which it is already devoted, except in cases where the overwhelming necessities of the public were such that in order to serve their needs, or supply their necessities, the taking of such property became necessary. Unless so limited, no rule governing the rights of those engaged in conducting a business for the benefit of the public could be formulated, which would afford them protection against others desiring to also engage in the transaction of a public business. While corporations engaged in business of a nature which requires them to serve the public, are said to be public corporations, they are, in fact, but private enterprises, inaugurated for the benefit of their stockholders, and if one such corporation may take the property of another so as to deprive the latter of the use to which it is devoted, except public necessity demands such taking, there would be no reasonable limit to the conditions under which the power of eminent domain might be exercised. Without the limitation suggested, the most absurd results could follow. The second might take from the first, others take from the latter, and the first turn about and retake, and thus the process go on *ad infinitum.—Lake Erie & W. R. Co. v. Board of Commissioners, supra.* The taking of property already devoted to a public

use to an extent which wholly defeats such use, for another public use can not be justified when it would merely result in a change of ownership, without in any manner tending to meet or serve the exigencies of public needs, or where the change of ownership would become a mere matter of private concern.— *Chicago & N. R. Co. v. Chicago & E. R. Co.*, 112 Ill., 589. In the circumstances of this case, neither comparative convenience, benefits, nor cost to the respective parties can be taken into consideration.

The next point urged is, that the Colorado Southern has no interest in the property in dispute as a right of way for railroad purposes. In support of this contention, two propositions are urged: (1) that parallel and competing lines of railroad can not be consolidated under the constitution and laws of this state; and (2) that neither the Colorado Southern nor its grantors have complied with the law of the United States relative to the steps which must be taken in order to hold a right of way for railroad purposes obtained from the general government, and that a failure on the part of the grantors of the Colorado Southern to comply with the law of the state with respect to the construction of railroads by corporations organized under the laws of this state resulted in a dissolution of their corporate existence before the Colorado Southern purchased such right of way from these companies. We do not deem it necessary to state the facts upon which these claims are based. It is averred in the petition that the Rio Grande Company owns a right of way through the lands which it is intended to include in the reservoir site, and that the Leadville, Cripple Creek and Colorado Southern companies each claim an interest in the property sought to be condemned, the nature and extent of which is unknown. These several parties are made respondents. The prayer is to the effect that the

right and interest of the several respondents be assessed according to the statute; for a decree that petitioner have the right to appropriate and occupy the premises for a reservoir site, and that the compensation of respondents and each of them be fixed, when ascertained.

One whose rights are not injuriously affected can not complain that a corporation has acted in excess of its powers, or without warrant of law. Thompson on Corporations, § 6030; Taylor on Private Corporations (3rd ed.), § 281; *Railroad Company v. Ellerman,* 105 U. S., 166; *New England R. Co. v. Central R. & E. Co.,* 8 A. & E. R. R. Cases (N. S.), 261.

The ultimate object of this action, so far as petitioner is concerned, is to acquire the title of respondents in the right or rights of way through the reservoir site. Petitioner has no interest in these premises. In compliance with the statute, it has made all claimants to any interest in them parties respondent in order that they may have an opportunity to establish the damages which they will sustain by taking the land in question. It is wholly immaterial to petitioner what the respective interests of these parties may be. If the law under which these rights were acquired by the respondents has been violated, or not complied with, certainly no rights of petitioner have thereby been invaded, because at no time has it had any interest to be affected. It can not assume the inconsistent positions of conceding, by commencing an action to condemn, that it has no interest in the premises in dispute, and then, after bringing in the parties whom it says do own or claim to own some interest, assert that they have none. Its right to condemn depends, primarily, upon the fact that the land thus sought to be taken belongs to another.—*Colo. M. Ry. Co. v. Croman,* 16 Colo., 381.

It must pay for the land taken. As to which respondent may be the owner of such land, the petitioner has no interest, further than to bring before the court those claiming an interest. If any dispute exists between these parties as to which may be the owner, that is a matter which they must settle between themselves. When the damages are assessed for taking the disputed premises, if the case reaches that stage, the amount which must be paid on this account can be turned into the registry of the court by the petitioner, and the parties who claim to be entitled to it can have that matter adjudicated. Petitioner cannot convert the action into one to quiet title, or forfeit corporate or property rights. So far as it is concerned, it must remain an action to condemn, and no issue can be injected into the case by it which will change its character in this respect.—*Colo. M. Ry. v. Croman, supra*. Many authorities are cited by counsel in support of the propositions just considered, but they are not in point. They were cases brought either directly for the purpose of testing such questions, or to forfeit corporate rights, or where the authority of a corporation seeking to exercise the power of eminent domain was challenged.

In this connection we shall dispose of the petition of intervention. Since the cause was brought here, the people, through the attorney general, have filed a petition and ask to be permitted to intervene. In this petition facts are alleged from which it is claimed the conclusion can be deduced that the railroad companies have no interest in the premises embraced in the proposed resorvoir site. The evident purpose and object of the intervention is to forfeit the corporate rights and franchises of the respondent railroad companies in the premises sought to be taken. The Leadville, Cripple Creek and Colorado Southern companies move to strike this petition from

the files. We are cited to decisions of this court where parties have been permitted to intervene in condemnation proceedings. In those cases the intervenors were interested in the subject matter of controversy. No such interest is exhibited by the people in this instance; they have no claim whatever to any part of the premises sought to be condemned, and are entitled to no damages which may be awarded. It is only parties who have an interest in the subject matter of dispute between litigants who are entitled to intervene. Aside from these considerations, an intervention can not be permitted when the result would be to change the entire character of the action, as in this instance, from proceedings in condemnation to that of *quo warranto*. Cases are cited from this and other courts where language has been employed to the effect that the sovereignty conferring a franchise may at any time and in its own appointed way and form, inquire into the manner in which the franchise granted is used. Those cases, however, were where the court had under consideration the method provided for direct proceedings in *quo warranto,* and have no application whatever to the case at bar, in view of the fact that it is a condemnation proceeding pure and simple, and cannot be converted into one of an entirely different character and nature, which would eliminate that feature as between petitioner and either of the respondents.

At the oral argument it was suggested that the Colorado Southern could not successfully object to the condemnation of the right of way in question, for the reason that it has never been used for railroad purposes. The trial judge found that at the time the petition in condemnation was filed, the Colorado Southern "was in possession of the premises sought to be taken, and had constructed thereon, and had in operation, a line of railroad," and concluded "the

lands so occupied and used was by such occupation and use devoted to public purposes.'' This finding and conclusion are not supported by the evidence, in the circumstances of this case. It appears from the pleadings and evidence, and the claims of the respective parties, that the predecessor in interest of the Rio Grande Company made claim to this right of way about 1883, and subsequently constructed a railroad grade thereon. According to the answer of the respondents, the Leadville, Cripple Creek and Colorado Southern companies, the Leadville Company, about 1889, made claim to the same right of way; that by virtue of an act of congress passed in 1896, the Cripple Creek Company claims to have acquired this right of way, or an interest therein; and that the Colorado Southern, organized in 1898, purchased from the Leadville and Cripple Creek companies their rights therein. Neither of the railroads, except the predecessor of the Rio Grande Company, ever did any work in the way of grading or constructing a road on this right of way until in September, 1899, at which time the Colorado Southern did lay rails and ties substantially or partially on the old grade belonging to the Rio Grande Company, and through the lands embraced in the reservoir site. The petition in condemnation was filed in November, 1899. It does not appear that the Colorado Southern at this time was using the line constructed, or ever intended to use it, for railroad purposes. No claim is made that trains were run over such road, for the purpose of traffic, or that it is the intention of the company to utilize this track for such purposes, or to extend its line of road beyond the point reached about the time these condemnation proceedings were instituted and heard below. In short, so far as advised from the present record, the laying of the rails and ties upon the right of way through the reservoir site appears to have been

for the one purpose of merely showing the existence of a railroad at this point by putting in place the materials from which a railroad is usually constructed. We have said that property already devoted to a public use cannot be taken under the exercise of the power of eminent domain, to an extent which will wholly defeat or supersede that use, but land which is not employed in, or needed for such use, is not within the reason or operation of this rule.—*Cin. S. & C. R. Co. v. Belle Centre, supra.* Corporations, like railroad companies, are organized for the transaction of public business, and to further this end, it is the policy of the national and state governments to permit them to acquire rights of way over the public domain. Such rights, however, can not be held indefinitely. They must, within a reasonable time, be subjected to the use for which they were granted. The general government, as well as this state, has provided laws which are intended to require railroad companies to complete their lines of road over a designated way within a definite period, otherwise, the rights in the right of way to the incompleted part of the road shall revert, or be forfeited. We refer to these not for the purpose of establishing a forfeiture, but as indicating an intent on the part of congress and the legislature of the state to prevent railroad companies from indefinitely holding a right of way to the exclusion of others who may desire to appropriate it to some other use. For something like sixteen years, the right of way in question has been held by different companies for railroad purposes. During all that period, it does not appear that it has ever actually been devoted to any such use. The fact that ties and rails were laid by the Colorado Southern a short time prior to the commencement of these proceedings, is not sufficient to show conclusively, or even *prima facie,* after the lapse of so many years, that it is the *bona fide* in-

tention of the company to construct or maintain a railroad over this right of way. True, the Colorado Southern had not been in existence a year at the time it did this work, but that is immaterial, in view of the fact that its rights to such right of way were acquired from other companies which never made any attempt to construct a railroad over it. The mere laying of rails, in the absence of a showing of a *bona fide* purpose to construct and maintain a railroad, is of no avail. The right of way must actually be devoted to, or needed for, railroad purposes, and the outward semblance of the existence of a road which is not used, is of no more avail than if none had been constructed.

The further point is made by the respondent railroad companies that petitioner has no power to condemn the right of way, because it is only a private corporation, and that a corporation of this character cannot condemn lands held for a public purpose. Whether petitioner is a public or private corporation is immaterial. As a private corporation, it is authorized, under the constitution, as we have already pointed out, to condemn lands for a reservoir site. By the provisions of sec. 1716, 1 Mill's Ann. Stats., it is provided that under the act of eminent domain, private property may be taken for private use for reservoirs, for agricultural, mining, milling, domestic or sanitary purposes. Property held by a public corporation which is not devoted to, or needed for, a public use, is as much private property as though held by an individual. Hence, it follows, that if the right of way is neither used nor needed for railroad purposes, it is private property, and petitioner, though a private corporation, may, under the provisions of the law on the subject of eminent domain, condemn for the purposes for which it is sought to be taken.

On behalf of the respondents, the Leadville,

Cripple Creek and Colorado Southern companies, a motion to dismiss was filed in this court, based upon the ground that it is without jurisdiction to hear or determine this case on error. No brief has been filed in support of this motion, but at oral argument, it was suggested that final judgment had never been entered in the court below. The effect of the judgment rendered was to deny the right of petitioner to take the premises by condemnation proceedings. This was determined on the issues made by the pleadings, and the testimony introduced by the respective parties at the time when a motion had been interposed by petitioner for the appointment of commissioners, and the motion of respondents to dismiss, were heard, and was a final judgment, because it denied the right of petitioner to condemn, and effectually settled the rights of the respective parties, so far as the proceedings in condemnation were concerned. The motion to strike the petition of intervention is sustained, and the motion to dismiss denied.

The judgment of the trial court is reversed and the cause remanded for further proceedings not in conflict with the views expressed, as though no trial had been had.

*Reversed and remanded.*

CHIEF JUSTICE CAMPBELL not participating.