525 P.2d 478 (1974)
BOARD OF COUNTY COMMISSIONERS OF WELD COUNTY and the Department of Highways, State of Colorado, Petitioners-Appellees,
v.
Don ANDERSON et al., Respondents-Appellees,
v.
UNION PACIFIC RAILROAD COMPANY, a corporation, Intervenor-Appellant.
No. 73-218.
Colorado Court of Appeals, Div. II.
April 30, 1974.
Rehearing Denied May 29, 1974.
Certiorari Granted August 26, 1974.
*479 Joseph M. Nontano, Denver, for petitioners-appellees.
Houtchens, Houtchens & Dooley, Barnard Houtchens, Greeley, Fuller & Evans, John M. Evans, Denver, for respondents-appellees Don Anderson and Lynn Keirnes.
Clayton D. Knowles, Denver, C. Barry Schaefer, Howard F. Coray, Omaha, Neb., for intervenor-appellant.
Selected for Official Publication.
PIERCE, Judge.
This is an appeal from a judgment declaring respondent Anderson to be the owner of a fee interest in certain land claimed by the intervenor railroad. The judgment was entered under C.R.C.P. 54(b) as a preliminary matter in an eminent domain proceeding initiated by the State Highway Department.

STATUS OF LOWER COURT PROCEEDINGS
While the parties do not raise objections at this stage to the form of the action, we find it necessary at the outset to discuss the unusual posture of the litigants in the proceedings below.
The action was initiated by petitioner as an eminent domain proceeding to condemn property for the expansion of a highway running parallel to the railroad's right-of-way. The petition in condemnation named respondent Anderson as the holder of a lease covering about ten acres of land within the railroad's right-of-way. The land in question will be referred to in this opinion as "the parcel." Prior to judgment on the condemnation petition, the lease expired, leaving respondent with no apparent compensable interest in the parcel.[1] However, Anderson then asserted that he owned the fee interest in the parcel.
The railroad was not named as a respondent in the action because it had entered into a 50-year lease agreement with petitioners covering the parcel according to its *480 usual practice of making unused portions of its right-of-way available to the state for highway purposes. After learning of Anderson's claim to the fee interest in the parcel, the railroad moved to intervene in the proceeding under C.R.C.P. 24 for the purpose of challenging Anderson's claim. The proceedings which ensued were between the railroad and Anderson only.
In the trial court, Anderson objected to the intervention of the railroad on the grounds that the railroad was not making claim to compensation for the property, but was seeking, in effect, to quiet title. He argues that such procedure was not permissible under the eminent domain statute and case law which he claims requires all title disputes to be determined after the compensation award has been determined, see 1967 Perm.Supp., C.R.S.1963, 50-1-6(3) and C.R.S.1963, 50-1-12, or in a separate proceeding altogether, where the petitioner itself is claiming an interest. See Englewood v. Reffel, 173 Colo. 203, 477 P.2d 361; 2 P. Nichols, Eminent Domain § 5.2[2].
This case presents a unique situation because one of the parties claiming title to the parcel does not seek compensation, but prefers to retain title and lease the land to the condemnor. The question of title is always theoretically preliminary to a compensation award. 2 P. Nichols, Eminent Domain § 5.2[2]. However, title disputes are normally determined after the property has been valued and the amount due from the condemnor has been set. Vivian v. Board of Trustees, 152 Colo. 556, 383 P.2d 801. In this case, the question of title is a preliminary question which must be determined before the assessment is made. If the railroad has the fee interest, then condemnation is unnecessary and the question of the parcel's value is irrelevant. The title issue was therefore properly determined prior to the valuation of the parcel.
Intervention has been refused in eminent domain proceedings only where the intervenor has no interest in the property. See, e.g., Denver Power & Irrigation Co. v. Denver & Rio Grande R.R., 30 Colo. 204, 69 P. 568. Nothing in the statute precludes a party from defending its title from condemnation in order to preserve its rights under a voluntary agreement with the condemnor. Furthermore, the procedure used is consistent with C.R.S. 1963, 50-1-12:
"Interventioncross petition.Any person not made a party to such proceeding may become such by filing a cross petition at any time before the hearing, setting forth that he is an owner or has an interest in the property sought to be taken or damaged by the petitioner, and stating the character and extent of such interest. The rights of such person shall thereupon be fully considered and determined." (Emphasis added.)
It should be noted that this procedure did not delay the petitioner's project, since immediate possession of the parcel was granted by the trial court under C.R.S.1963, 50-1-6(6)(a).

INTERVENOR'S STANDING TO APPEAL
Anderson argues on appeal that whatever the merits of the railroad's intervention, it does not have standing to appeal the judgment. His contention is that the railroad can show no injury from this judgment to the operation of the railroad. We disagree.
Once intervention has been properly granted, an intervenor has the right to appeal any final judgment affecting it adversely, 3B J. Moore, Federal Practice ¶ 24.15. The judgment here declares the rights of these parties to the parcel. If the judgment is correct, it will defeat the railroad's rights under its lease to the highway department. Furthermore, other landowners derive their title from the same grant from the railroad's predecessor. Thus, and adverse interpretation of that grant in this litigation may well operate to collaterally estop the railroad from seeking *481 a different result in future proceedings. See Murphy v. Northern Colorado Grain Co., 30 Colo.App. 21, 488 P.2d 103; Restatement of Judgments § 75.
Anderson also argues that only the state highway department is adversely affected by the result below because, by that result, it would have to compensate Anderson instead of leasing the parcel at a nominal rental from the railroad. The fact that the petitioner may have had standing to appeal this judgment also does not defeat the railroad's standing based on the adverse effects stated above.
We conclude that the judgment adversely affects the rights of the railroad and that the railroad, therefore, has standing to appeal. See Miller v. Clark, 144 Colo. 431, 356 P.2d 965.

THE ESSENTIAL FACTS AND EVIDENCE
This case was tried on the merits upon stipulated facts and documentary evidence. No errors are raised on appeal with respect to the reception of evidence at the trial. Thus, the issues before this court are the same issues of interpretation of a deed and federal statute which were before the trial court. While the judgment of a trial court based on conflicting evidence is entitled to a presumption of validity, even where the evidence is documentary, see Adler v. Adler, 167 Colo. 145, 445 P.2d 906, where, as here, the evidence is uncontradicted and the only issues are legal questions of interpretation of written documents, this court is obligated to make an independent judgment on the merits. Van Diest v. Towle, 116 Colo. 204, 179 P. 2d 984. See Alley v. McMath, 140 Colo. 600, 346 P.2d 304.
Each of the parties claims title to the parcel from a common grantor, the Denver Pacific Railroad.[2] That railroad was granted a right-of-way for its tracks between Denver and Cheyenne under the Pacific Railroad Acts. Act of July 1, 1862, 12 Stat. 489;[3] Act of July 2, 1864, 13 Stat. 356; Act of July 3, 1886, 14 Stat. 79; Act of March 3, 1869, 15 Stat. 324. The right-of-way was 400 feet wide extending 200 feet on either side of the centerline of the tracks. The parcel lies wholly within an area covered by the original right-of-way grant. The Union Pacific Railroad (the intervenor here) is the successor of the Denver Pacific and it is uncontested that it holds whatever interest the Denver Pacific held, less the interest, if any, conveyed to Anderson's predecessor in title, James Duff.
The dispute centers around a deed given by the trustees of the Denver Pacific to Duff in 1880 pursuant to a contract for sale entered into in 1878. The deed conveyed to Duff a "land grant" section traversed by the right-of-way. The granting clause of the deed contained the following language:
"Reserving to said Company, and its assigns, the right of way for said railway as not located on the premises, 400 feet in width, being 200 feet on each side from center of the track."
The result in this case depends on the extent of the interest retained by the Denver Pacific in the deed to Duff.
The railroad contends that the trustees of the Denver Pacific intended to convey a fee interest to Duff in only the land lying outside of the right-of-way and that, therefore, the whole interest originally granted to the Denver Pacific in the right-of-way passed to the Union Pacific. Anderson argues, and the trial court found, that the language in the deed served to reserve only *482 an easement for the right-of-way and that any fee interest originally granted to the Denver Pacific passed to Duff, and, by subsequent conveyances, to Anderson.

THE INTEREST CONVEYED
We conclude that the trial court erred in finding that the trustees of the Denver Pacific Railroad intended to convey a fee interest to Duff reserving only an easement.
It is well settled that the technical use of the terms "reservation" and "exception" is not conclusive in determining the effect of a granting clause which excludes from a grant any portion of the described property. Instead the intent of the parties must be ascertained from the instrument considered as a whole. Proctor v. Graham, Colo.App., 506 P.2d 1236.
A "reservation" occurs where the granting clause of the deed operates to exclude a portion of that which would otherwise pass to the grantee by the description in the deed and "reserves" that portion unto the grantor. Reservation usually entails the severance of a lesser estate from the fee interest as where a fee is conveyed but an easement or other rights such as rents or profits are created and retained by the grantor. An "exception" occurs where a portion of the property described is excluded from the grant either because it is property that has previously been severed from the estate (and is usually held by someone other than the grantor) or where the grantor intends to retain the entire interest in a portion of the estate described in the granting clause. When an exception occurs, there is no severance of a new estate or interest in the property (other than the possible reduction in physical size of a parcel where the grantor retains a full interest in a part of the property described in the deed). See Haymaker v. Windsor Reservoir & Canal Co., 81 Colo. 168, 254 P. 768; Proctor v. Graham, supra; Newport v. Hatton, Cal., 271 P. 471, revised on other grounds upon rehearing, 207 Cal. 515, 279 P. 134; 1 E. King, Colorado Practice § 210.
In the case before us then, we must ask whether the intent and effect of the language in this deed was to create a new easement to be retained while conveying the underlying fee or only to retain all of that interest which the grantor held in the property excluded.
We can make no assumptions about the nature of title that the trustees of the Denver Pacific thought they held in the right-of-way in 1880 when the deed was drawn because it was not until 1903 that the United States Supreme Court definitively held that rights-of-way granted to railroads by the Pacific Railroad Acts were "limited" or determinable fee interests. Northern Pacific Ry. v. Townsend, 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044. Absent such a determination the term "right-of-way" is inherently ambiguous as it has been used to describe both easements and fee interests. See 6 G. Thompson, Real Property § 3090.
In order to accept Anderson's contention that only an easement was retained, we must be able to say that the deed reflects the intention of the trustees to convey the fee interest. It is more likely, however, that given the lack of any precise definition of the extent of the right-of-way estate held by the railroad at the time this deed was drawn, the railroad intended to retain the right-of-way in full, whatever its interest in the property was in actuality. The granting clause does not by its language purport to sever from a larger estate only a right of passage or easement; instead, it reserves unto the grantor "the right-of-way for said railway as now located on the premises . . . ." Thus, the granting clause described a definitely located strip of land upon which an established railroad right-of-way existed. Under these circumstances, we are persuaded that the "reservation" clause operates as an exception of existing and established rights in the railroadnot the severance of a right of passage which did not have *483 prior independent existence. See Newport v. Hatton, supra.
This conclusion is supported by the fact that the right-of-way grant from Congress to the railroad was independent of the grant of lands in aid of construction even where the right-of-way traversed the lands granted in aid of construction. It is clear from a reading of the Acts of Congress that the land grant sections were to be conveyed to the railroad, by patent from the U.S. Government, in order to create a source of revenue for the construction of the railroad. See Act of July 1, 1862, §§ 3 & 4, 12 Stat. 492.
Thus, the primary purpose of the grant from the railroad to Duff was to dispose of the land-grant section according to the Congressional purpose. Furthermore, the trust indenture covering the Denver Pacific's property expressly permitted sale of land-grant sections by the trustees, but provided for sale of the right-of-way and other appurtenances only upon default under the mortgage. Thus, to ascribe to the trustees an intent to convey a fee interest in the right-of-way would imply an intent to convey more than they were authorized to convey under the trust indenture. Nothing in the circumstances surrounding this conveyance shows any ascertainable intent on the part of the railroad to convey in addition any interest in the right-of-way obtained by the railroad by an independent Congressional grant.
Anderson argues that other language in the deed indicates an intent to reserve the right-of-way as an easement. First, he argues that the words "and its assigns" in the reservation clause indicate retention of a lesser estate since such language would have been unnecessary if a fee interest were retained. 1 E. King, supra. We consider it unlikely that this language was inserted to guard against the possibility that a determination would be made that the right-of-way originally granted was less than a fee interest and that it was used to reflect the intention to retain only an easement.
Next, Anderson supports the trial court's conclusion by referring to language in the deed regarding a covenant wherein the grantee agreed to erect and maintain a fence along the right-of-way "upon the land hereby conveyed." Since the covenant was expressly stated to run with the land, Anderson maintains that the railroad thought it was conveying a fee interest in the right-of-way. We disagree since one cannot tell whether the term "land conveyed" refers to the right-of-way or to the adjoining property, which was undisputedly conveyed in fee. For the same reasons, we find unpersuasive Anderson's argument that a liability disclaimer clause included in the deed to protect the railroad from suit for damages to property conveyed to Duff shows an intent to convey the fee in the right-of-way.
The trial court supported its interpretation citing only post-1880 decisions which held that the term "right-of-way" denotes only an easement. These cases are not persuasive as they do not reflect an understanding of the term in the context of the grant before us. If the "easement" interpretation of the words "right-of-way" was firmly established at the time of this grant, then the trustees would most probably have understood that they had only an easement to begin with. Therefore, they would not have intended to convey a fee interest which they did not believe they owned.
Finally, the trial court supported its findings by reference to other deeds from the railroad which purported to convey a fee interest in the right-of-way. Such conveyances were referred to in House and Senate Committee reports[4] before the Congress concerning the Norris Act of 1912. (That Act validated such conveyances where a fee was conveyed.) However, Anderson has not shown in this record that such conveyances were made by deeds using the same language as the *484 deed before us. That other deeds, whose precise language is not before us, may have conveyed a fee interest, does not convince us that this deed conveyed a fee interest.
The trial court did rely, in part, on a deed executed in 1870 by the trustees of the railroad to Horace Greeley as evidence that a fee conveyance was intended. This deed, however, is support for the contrary conclusion. The limiting language in the deed to Greeley reserved only 200 feet of the original 400-foot right-of-way. Thus, on its face, it purports to convey the outer 100 feet on each side of the original right-of-way strip. Had the trustees intended a similar conveyance in the case before us they could have done so by limiting their reservation to the smaller dimension of 200 feet. Anderson does not claim, nor is there evidence in the record to support a conclusion that the deed to Greeley conveyed any of the fee interest underlying that part of the right-of-way which was reserved in the Greeley deed. Therefore, we conclude that the deed to Greeley does not support the conclusion of the trial court.
We have examined Anderson's other contentions in support of the trial court's judgment and find them unpersuasive in light of the circumstances and uncertainty with respect to the nature of the railroad's interest in the right-of-way which prevailed at the time the deed was executed.
Since we rule that the deed from the Denver Pacific trustees to Duff did not convey a fee interest in the right-of-way, it is unnecessary to address further contentions of the railroad on appeal.
The judgment of the trial court is reversed and cause remanded with directions to enter judgment declaring the Union Pacific Railroad to be the owner of the parcel of land in question. Such judgment shall have the effect of declaring only the rights of these parties as between each other and shall not purport to quiet title against anyone not a party to this action.
ENOCH and RULAND, JJ., concur.
NOTES
[1] A mere expectancy of renewal of a lease is not compensable. See United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729.
[2] The Union Pacific actually acquired its interest in a foreclosure sale in 1898. The conveyance to it was from a special master pursuant to a judicial sale.
[3] Section 2 of this act granted a right-of-way "for construction of said railroad" and the following section separately granted alternate sections of land "for the purpose of aiding in the construction."
[4] H.R.Rep. No. 593, 62D Cong., 2d Sess.; S.Rep. No. 868, 62D Cong., 2d Sess.