CONSUMERS POWER CO. *v.* CITY OF ALLEGAN.

1. ELECTRICITY—CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS.
   Constitutional provision (article 8, § 23) limiting amount of electric light and power city may sell and deliver outside corporate limits to 25 per cent. of amount furnished within city may not be nullified or circumvented by furnishing current to outsiders through meters located within city limits, under fiction that by so doing current was "furnished" within corporate limits.

2. SAME—PRODUCTIVE CAPACITY OF PLANT NOT LIMITED TO PRESENT NEEDS.
   Productive capacity of electric light and power plant, when first erected by city, is not limited by Constitution (article 8, § 23) to 125 per cent. of demand then within city limits, but city may provide for future needs.

3. SAME—MUNICIPAL CORPORATIONS—SPECIAL ELECTIONS—FORM OF BALLOT.
   Ballot at special election reading, "Shall the city of Allegan acquire, by purchase or construction, works for supplying the city and its inhabitants with electric light and power," is not objectionable on ground that it presented question in dual form, since single question presented was as to whether city should "acquire" plant, and manner of acquiring was only an incident.

4. SAME—SUBMITTING GENERAL AND MORTGAGE BOND ISSUES SEPARATELY NOT FATAL.
   Submitting separately at special elections general bond issue and mortgage bond issue for purpose of raising money to erect city electric light and power plant, was not irregular under 1 Comp. Laws 1915, § 3178, requiring submission to electors of question of raising amount of money required, where the electors were at all times fully advised as to total estimated cost thereof.

5. INJUNCTION—VIOLATION OF CONTRACT IN FUTURE.
   Where electric light and power plant, which city is planning to build, will not be finished until expiration of contract with

On the general rule that a proposition submitted to the people with reference to erection or purchase of plant or other public utility is a single or double proposition, see annotation in 5 A. L. R. 538.

power company wherein city agreed not to erect or operate any electric generating equipment of greater generating capacity than its then existing plant during life of contract, injunction restraining its erection was properly denied.

6. Electricity—Municipal Corporations—Wisdom of Plan Not Reviewable by Courts.

Wisdom of city's determination to handle distribution of electric current to be produced by new plant through its present equipment and by using funds now on hand rather than by adding cost thereof to total amount to be raised by bond issues may not be reviewed by courts.

7. Appeal and Error—Question Not Appealed From Not Before Court.

Where plaintiffs appealed from decree granting injunctive relief on one ground and denying others, and defendants did not appeal, portion of decree granting relief is not before Supreme Court.

Appeal from Allegan; Brown (William B.), J., presiding. Submitted June 19, 1929. (Docket No. 91, Calendar No. 34,427.) Decided September 4, 1929.

Bill by the Consumers Power Company and others against the City of Allegan, a municipal corporation, and officials to enjoin the sale of bonds for acquiring an electric lighting plant. From decree entered, plaintiffs appeal. Affirmed.

*Wilkes & Stone, Walter D. Kline,* and *Bernard J. Onen,* for plaintiffs.

*Leo W. Hoffman, Clare E. Hoffman,* and *Perle L. Fouch,* City Attorney, for defendants.

North, C. J. The Consumers Power Company, one of the plaintiffs herein, owns and operates within the city of Allegan, Michigan, which is one of the

defendants, an electric power plant. This company and the other plaintiffs are taxpayers in the defendant city, and as such file this bill. The Consumers Power Company is also asserting its alleged rights because of its contract relations with the city. In June, 1926, this company entered into a contract with the city of Allegan to furnish to it electric energy for its entire requirements excepting such as the city might provide for itself through the operation of a generating equipment owned by the city or other equipment of equivalent capacity. The contract in part provides:

"This contract shall continue for a period of five years from the date hereof. * * *

"In consideration of the rates herein provided, the city expressly agrees that, during the term of this contract, it shall not at any time instal or operate any electric generating equipment of a greater generating capacity than that of the electric equipment now owned and operated by the city, and that it shall purchase from the company, under this contract, all of its requirements for the operation of its municipal street lighting system and municipal water pumping equipment, over and above the energy produced from the city's present generating equipment or equipment of equivalent capacity. * * * In case any violation of the provisions of this paragraph shall occur, the company reserves the right to cancel the rates herein provided."

Prior to January, 1927, the city had caused to be made a preliminary investigation looking toward the purchase of a water power site on the Kalamazoo river outside of the city limits of Allegan, and the construction of a hydro-electric power plant to be operated by it as a municipal project. By such investigation it was ascertained that the estimated

cost of the project was $440,000 exclusive of the equipment necessary for distribution in the city, the cost of which was estimated at an additional $70,000. On the basis of this information, the city council passed a resolution June 20, 1927, reciting that the estimated cost was $440,000, and declaring it expedient for the city of Allegan to acquire by purchase or construction works for the, purpose of supplying the city and its inhabitants with electric light and power, and to bond the city for $185,000 "for the purpose of paying *a part* of the cost of purchasing or constructing such lighting and power works." These two propositions were approved by a vote of the electors at the special election of July 12, 1927. While negotiations for the sale of the bonds were pending, plaintiffs filed the bill of complaint herein, and they seek to have the city and its officials restrained from negotiating the bonds and from incurring any obligation incident to the acquiring of the proposed electric plant. The relief sought was only partially granted, and the plaintiffs have appealed.

Six reasons are assigned in support of plaintiffs' contention that the city's undertaking here complained of is irregular and unlawful and should be enjoined. We will consider these reasons separately.

1. The proposed action of the city of Allegan in acquiring and operating this hydro-electric plant is in violation of the Michigan Constitution, Art. 8, § 23, which reads:

"Subject to the provisions of this Constitution, any city or village may acquire, own and operate, either within or without its corporate limits, public utilities for supplying water, light, heat, power and transportation to the municipality and the inhabit-

ants thereof; and may also sell and deliver water, heat, power and light without its corporate limits to an amount not to exceed twenty-five per cent. of that furnished by it within the corporate limits * * * ,,

The appellants claim that the city is planning to sell and furnish outside the city limits more than 25 per cent. of the amount furnished within the city, and thus violate the foregoing constitutional provision. It is a fair inference from this record that the power site and plant which the city contemplates developing will have a capacity to produce from five to seven times the amount of electric current now used in the city of Allegan. The record likewise discloses at least that some of the city officials were proceeding on the assumption that all of the surplus electric current produced by the plant could and would be sold by the municipality. It was understood that by reason of the constitutional limitation the amount of light and power the city could sell and deliver outside of its limits could not exceed 25 per cent. of the amount furnished within the city; but it seems to have been assumed by some individuals that this constitutional provision might be circumvented by furnishing the current to outsiders through meters located within the city limits, and by so doing the municipality would be able to say it "furnished" such light or power "within the corporate limits." Clearly such a fiction cannot be permitted to nullify the condition upon which this grant of power to own and operate public utilities was bestowed upon villages and cities. Such a claim was never made officially in behalf of the city, and no such contention is now asserted by it. The right of the city to sell and deliver current out-

side of its corporate limits is limited in amount to 25 per cent. of the quantity furnished by the city within its corporate limits and there used. The plaintiffs will have ample remedy if and when the municipality attempts to sell current in violation of this constitutional provision. As yet it has not undertaken to do so.

Plaintiffs also assert that this constitutional provision requires that the productive capacity of a municipal plant when first erected cannot be in excess of 125 per cent. of the demand then within the city limits. We do not so read the constitutional provision. Its only purpose is to limit the outside commercial aspect of such an enterprise to 25 per cent. of the home consumption. By this limitation and to this extent the outside commercial activity of the municipality is restricted. The construction sought by the plaintiffs would unduly interfere with the right and duty of a city to plan for its future needs. If, as is here claimed, electric current for its needs can be furnished to the city of Allegan at a much less cost than that now prevailing, it is fair to conclude that an increased and diversified use of electric current will result. It is common knowledge that cheap power attracts and fosters industrial activity. The constitutional provision should not be misconstrued in such a manner as will prevent cities from planning their public utilities in anticipation of their future needs. It may be noted that the same constitutional restriction applies to a city's right to acquire a source of water supply, but it would hardly be contended that because of the inhibition found in the Constitution a city would not have the right to acquire and control a water supply which had a capacity of more than 25 per cent. in excess of

the city's present need. The city's undertaking is not in this respect in violation of the constitutional provision.

2. The appellants assert that the special election held July 12, 1927, was invalid because in the council's resolutions preliminary thereto and on the ballots used by the electors the proposition under consideration was presented in an alternative and disjunctive form. The ballot used at the special election was as follows:

"Shall the city of Allegan acquire, *by purchase or construction,* works for supplying the city and its inhabitants with electric light and power.
"Yes  (   )
"No   (   )."

Plaintiffs' contention is that the ballot should have presented either the question of "purchasing" or the question of "constructing" an electric light and power plant; and that as submitted the issue was presented in a dual form and therefore a valid result could not be and was not obtained. The decisive consideration is whether after all the ballot above quoted presented two questions or did it present only one, namely, shall the city "acquire" a plant for supplying electric light and power? This controversy is not a new one before the courts. Counsel for plaintiffs have frankly said in their brief "the rule for which we are contending is held to be the minority rule," referring us to the note in 5 A. L. R. p. 519 in connection with the case of *Albuquerque* v. *Water Supply Co.,* 24 N. M. 368 (174 Pac. 217). The authorities are collected in the note, and we will not review them here. We are of the opinion that the question that the electors of Allegan wanted to decide and did decide was whether the municipality should own and operate

an electric light and power plant. The manner in which it was to be "acquired," whether by purchase or by construction, was only an incident. So construed, the ballot presented a single issue, and the validity of the election cannot be successfully assailed on this ground. This holding is supported by weight of authority.

3. The action taken by the city of Allegan is invalid and void because the question of raising the entire estimated cost of this project ($440,000) was not submitted to a vote of the electors at one time.

In presenting this contention, appellants cite the statute (1 Comp. Laws 1915, § 3178), which provides:

"And the question of raising the amount required for such purpose shall be submitted to the electors of the city."

The matter of bonding the city of Allegan for $185,000 "for the purpose of paying a *part* of the cost of acquiring such light and power works" for the city was submitted at the special election of July 12, 1927. More than six months prior to this the city had caused the required preliminary investigation (1 Comp. Laws 1915, § 3178) to be made, and by it as well as by public records of the city the total estimated cost was shown to be $440,000. The bill of complaint herein was filed October 6, 1928. Thereafter, but before defendants' answer was filed, another election was held (November 6, 1928), at which the electors approved the proposition to issue mortgage bonds covering the hydro-electric plant to the amount of $255,000. In this manner "the question of raising the amount required for such purpose" was submitted to and ratified by the electors. There is nothing in this record that would justify an inference that the electorate was not fully ad-

vised at all times as to the total estimated cost of $440,000. The detailed report to the common council of Allegan by its engineers, who made the preliminary investigation, appears to be dated January 7, 1927. The items making up the estimated cost of $440,000 and other details are therein contained. We think there was no irregularity in submitting the matter of the general bond issue and the mortgage bond issue separately. This identical question was presented to this court in *Stanhope* v. *Village of Hart,* 233 Mich. 206, but the case was decided upon another issue, Justice Wiest saying: "But one point merits discussion." If there had been any merit in this contention, the record in the *Hart Case* presented such a situation as would have resulted in its adjudication at that time.

4. The city by undertaking to acquire a municipal plant violated or at least threatens to violate and impair its obligations evidenced by its contract of June 16, 1926, with the Consumers Power Company, and warrants injunctive relief.

Notwithstanding appellants' contention to the contrary, we are of the opinion that the Consumers Power Company will have an adequate remedy at law if such a right of action accrues to it. And further, it may be noted that the other parties plaintiff could not possibly have an interest in prosecuting such a cause of action. In fact, as taxpayers, their interests evidently would be adverse to those of the Consumers Power Company. At least, we are satisfied that injunctive relief should not be invoked until the city actually undertakes to "operate" its plant in violation of the terms of its contract. In so holding, we have not overlooked the provision of the city's contract with the Consumers Power Company that the city "shall not at any time (during the life

of its contract) instal or operate any electric generating equipment, etc." We think the fair construction of this contract is that the city thereby bound itself not to instal and operate an electric generating plant "of a greater generating capacity" than its present plant, during the life of its contract with the Consumers Power Company. The facts established by the record are fully consistent with the claim that the city does not expect to operate its proposed plant during the life of its present contract, which expires in 1931. Reasonable time for construction will consume the intervening period. If it were to be conceded that the Consumers Power Company does not have a remedy at law adequate to protect it from the alleged threatened breach of contract, it may still have recourse to injunctive relief if the city actually operates an electric generating equipment in violation of its contract. It is conceded that to the extent provided in its contract the city still has the right to operate electric generating equipment. In this respect and also because the contract between these parties will have expired by the time the city's proposed plant can be erected or soon thereafter, we think the case differs from *City of Walla Walla* v. *Walla Walla Water Co.*, 172 U. S. 1 (19 Sup. Ct. 77) and other cases cited by appellants.

5. Appellants further contend that the authorized bond issue totaling $440,000 covers only the cost of bringing the electric current to the city limits of Allegan, and hence it appears that the total cost of the undertaking has not been provided and the bond issue should be enjoined.

Relative to this phase of the case the record shows (as above stated), that the estimated cost of equipment for distributing electric current after it

is brought to the city limits will be $70,000. But it also appears that this item has been provided for by the city by reason of its already having at least a partial means of distribution used in connection with its present plant, and also that it has certain funds now on hand with which to meet the cost of this item. The wisdom or soundness of the city's determination to so handle this phase of its undertaking cannot be reviewed by the courts but rests with the municipality which seems to have made provision for the same and also for the total estimated cost of the plant located outside of the city.

6. Appellants' sixth contention is that authorization of this bond issue was premature, for the reason that the city had not, and has not as yet, obtained from the Federal Power Commission a license to build the dam at the proposed site of the hydro-electric plant, and therefore sale of its bonds should be restrained until such license is obtained.

This contention was approved by the trial court, and injunctive relief granted to the plaintiffs on that theory. The defendants have not appealed from the decree thus entered, and hence this portion of it is not before us for review. The decree taken in the circuit court for Allegan county, in chancery, is affirmed, with costs of this court to the appellees.

FEAD, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred. The late Justice FELLOWS took no part in this decision.