CITY OF ALLEGAN v. IOSCO LAND CO.

1. EMINENT DOMAIN—CONSTITUTIONAL LAW—STATUTES—MUNICIPAL CORPORATIONS.

Authority of cities to "acquire" public utilities under article 8, § 23, of the Constitution, does not include power of condemnation, but such power must be found in statutes.

2. SAME—LEGISLATURE HAS POWER TO GRANT RIGHT OF CONDEMNATION TO CITIES.

Constitution left unimpaired power of legislature to grant or withhold from cities power of condemnation, although constitutional power of condemnation was refused (articles 8, 13).

3. MUNICIPAL CORPORATIONS—RIGHT OF CITIES TO ACQUIRE WATER POWER.

Constitutional right of cities to acquire public utilities outside corporate limits includes water power with usual accompaniment of floodage (article 8, § 23).

4. EMINENT DOMAIN—MUNICIPAL CORPORATIONS—AMENDMENT OF CHARTER.

Amendment of city charter under home rule act (1 Comp. Laws 1929, § 2236, subd. [3]), authorizing city to acquire by purchase or condemnation public utility by three-fifths vote of electors is not invalid because electors were not required to vote specifically on whether utility should be acquired by condemnation.

5. MUNICIPAL CORPORATIONS—AMENDMENT OF CHARTER.

Piecemeal amendments of existing city charters, without previous revision or incorporating mandatory provisions of home rule act are now permissible.

6. EMINENT DOMAIN—MUNICIPAL CORPORATIONS—STATUTES—REPEAL BY IMPLICATION.

Authority granted city to acquire public utility and water power rights within corporate limits of city (1 Comp. Laws 1929, § 2271) by purchase or condemnation does not modify earlier section (2236) authorizing establishment of water power outside city; there being no repugnancy.

7. SAME—PERMISSION OF STATE HIGHWAY COMMISSIONER TO FLOOD LAND SHOULD BE ALLEGED.

In view of mandatory character of 1 Comp. Laws 1929, § 4546, municipality seeking to condemn water power rights for public utility must be legally authorized to make improvement, and therefore its petition for condemnation should have alleged that permission of State highway commissioner had been obtained.

8. SAME—SINGLE CONDEMNATION PROCEEDINGS MUST COVER ALL LANDS SOUGHT.

Single proceeding must cover all lands sought to be condemned by city for public utility (1 Comp. Laws 1929, § 3784 et seq.)

9. APPEAL AND ERROR—EMINENT DOMAIN—CONSOLIDATION OF SEVERAL PROCEEDINGS.

Consolidation of several proceedings by city to condemn land for public utility may not be had in Supreme Court, where some of parties involved are not before court.

Certiorari to Allegan; Miles (Fred T.), J. Submitted April 10, 1931. (Docket No. 63, Calendar No. 35,395.) Decided June 1, 1931.

Condemnation proceedings by City of Allegan, a municipal corporation, against Iosco Land Company, a corporation, and others to acquire land and water rights for a municipal hydroelectric plant. From order denying motion to quash petition, defendants bring certiorari. Reversed.

*Leo W. Hoffman, Clare E. Hoffman,* and *Perle L. Fouch,* City Attorney, for plaintiff.

*Walter D. Kline, E. W. Stone,* and *Bernard J. Onen,* for defendants.

FEAD, J. This is review of an order denying motion to quash a petition for condemnation of certain lands lying outside the city limits of Allegan, desired by plaintiff for the construction of a municipal

hydroelectric plant to furnish light and power to the inhabitants of the city. The project includes the building of a dam and flowage of over 1,500 acres of land. Other phases of the controversy have been before this court in *Consumers Power Co.* v. *City of Allegan,* 248 Mich. 34.

Plaintiff relies for its authority to condemn on certain statutes and charter provisions, and particularly on the Constitution, Art. 8, § 23:

"SEC. 23. Subject to the provisions of this Constitution, any city or village may acquire, own and operate either within or without its corporate limits, public utilities for supplying water, light, heat, power and transportation to the municipality and the inhabitants thereof; and may also sell and deliver water, heat, power and light without its corporate limits to an amount not to exceed twenty-five per cent. of that furnished by it within the corporate limits; and may operate transportation lines without the municipality within such limits as may be prescribed by law: *Provided,* That the right to own or operate transportation facilities shall not extend to any city or village of less than twenty-five thousand inhabitants."

Defendants contend that such section gives cities power only to purchase utilities, and that there is an implied constitutional prohibition against the legislature granting them authority to condemn as to outside water power and lands, because, in the constitutional convention, a proposal was presented to give cities power to condemn for such specific purposes and it was defeated after spirited discussion. 2 Debates, Const. Con., pp. 869–871, 1208–1215, 1350–1356.

In the convention, the subject of the authority to be given cities under section 23 and the subject of

eminent domain, article 13, were closely related. 1 Debates, Const. Con., pp. 357, 731; 2 *Id.*, p. 1350, Mr. Stewart. The rejection of the proposal, as well as some of the discussion (2 Debates, Const. Con., p. 869, Mr. Thew), indicates that the grant of power in section 23 to cities to "acquire" public utilities was not understood or intended to include the power of condemnation. Had it been the intention to give cities constitutional power of eminent domain, it would have been provided in article 13, or definitely expressed in article 8. We are of the opinion that the authority to "acquire" in article 8, § 23, does not include power of condemnation, and that such power in plaintiff must be found in the statutes.

Despite the defeat in the convention of the proposal to give cities such right of condemnation, no relevant restriction appears in the Constitution on the sovereign power of eminent domain vested in the legislature. The result is that, although the convention refused to give cities a constitutional power of condemnation, which would be beyond control of the legislature, it left unimpaired the power of the legislature to grant or withhold it. There were too many good lawyers in the convention to justify an implication that the obvious effect of what the convention did was not intended.

In these respects, the constitutional debates illuminate, but do not change, the natural construction of the section as adopted.

Defendants contend that article 8, § 23, was intended to permit cities to establish steam plants or small works outside their corporate limits, but was not designed to authorize flowage of land. The language suggests no such limitation. Floodage is a usual accompaniment of water power. The right to acquire utilities outside the city would be of little

worth if it did not include water power, the preferred means of generating electric current, where feasible. The constitutional debates on the subject revolved around power plants then already established for lighting purposes by cities and villages outside their limits. As proposed to the convention, this section did not contain the clause "either within or without its corporate limits," and, in the discussion upon the omission, which was cured by amendment, 2 Debates, Const. Con., p. 824, the necessity for such clause was emphasized to provide for the acquisition of such outside water power. 2 Debates, Const. Con., p. 822 *et seq.* Defendants' contention is not tenable.

Acting under the home rule act, 1 Comp. Laws 1929, chap. 49, plaintiff adopted an amendment to its charter substantially as permitted by 1 Comp. Laws 1929, § 2236, subd. (3):

"Sec. 4-f. Each city may in its charter provide: * * * Water, light, heat, power, transportation; referendum. (3) For the purchase and condemnation of private property for any public use or purpose within the scope of its powers; also for the acquirement, ownership, establishment, construction and operation, either within or without its corporate limits, of public utilities for supplying water, light, heat, power and transportation to the municipality and the inhabitants thereof, for domestic, commercial and municipal purposes; and for the sale and delivery of water, heat, power and light without its corporate limits to an amount not to exceed twenty-five per centum of that furnished by it within its corporate limits for like purposes; and for the operation of transportation lines without the municipality and within ten miles from its corporate limits: *Provided,* That the right to own or operate such transportation facilities shall not extend to any

city of less than twenty-five thousand inhabitants according to the last preceding United States census, or local census taken by authority of a resolution of the legislative body of such city. The acquirement of any such utility together with all properties, franchises, and rights necessary for its establishment, ownership, construction, operation, improvement, extension and maintenance, whether such properties, franchises and rights are situated within or without the corporate limits of such city, may be either by purchase or condemnation. If by condemnation, the provisions of act number one hundred forty-nine of the public acts of Michigan, approved March twenty-five, nineteen hundred eleven, entitled, 'An act to provide for the condemnation by State agencies and public corporations of private property for the use or benefit of the public and to define the terms "public corporations," "State agencies," and "private property," as used herein,' or such other appropriate provisions therefor as exist or shall be made by law, may be adopted and used for the purpose of instituting and prosecuting such condemnation proceedings: *Provided, however,* That no such public utility shall be so acquired unless the proposition to do so shall have first received the affirmative note of three-fifths of the electors of such city voting thereon, at a regular or special municipal election."

The essential difference between the statute and the charter is that, instead of the last proviso, the city adopted the following:

"But no such public utility shall be acquired unless authorized by a three-fifths vote of the electors voting thereon at a regular or special election."

Defendants contend that under the rule of "last antecedent" the word "so" in the last proviso of the statute refers only to condemnation, so that the

section requires the electors to vote specifically upon whether a utility shall be acquired by condemnation; and the charter provision is invalid because it omitted the word "so."

Under article 8, § 25, of the Constitution, a three-fifths vote of the electors 'is necessary to authorize a city to "acquire" a utility. If that means that the legislature could authorize its condemnation without such vote, an inadmissible construction, the proviso might be said to have been inserted to make the condition uniform as to purchase and condemnation. Both purchase and condemnation are so commonly employed in acquiring property for public improvements that it would be difficult to imagine that the legislature intended to require the electors to approve a precise method of acquisition rather than to grant the council power to acquire, leaving to it the method which may be advisable or necessary under the circumstances. The more sensible construction is that the legislature incorporated the constitutional mandate in the statute in order to require charters to clearly express the essential of exercise of the power of acquisition, not merely its incidents, purchase or condemnation. *Consumers Power Co.* v. *City of Allegan, supra.*

Furthermore, the structure of section 4-f(3) as a whole quite conclusively demonstrates that the legislature did not have in mind the precise rule of "antecedent subjects" in drafting the statute. Such rule would be equally applicable to the preceding proviso regarding transportation, and, if there applied, would result in the unconstitutional permission to a city to acquire a transportation utility wholly within its corporate limits, although the city be under 25,000 population.

We think the charter amendment as adopted by plaintiff is within the statutory authorization.

Piecemeal amendments of existing city charters, without previous revision or incorporating the mandatory provisions of the home rule act, are now permissible. *Common Council of Detroit* v. *Engel,* 187 Mich. 88.

Section 35 of the home rule act, 1 Comp. Laws 1929, § 2271, provides that any city may acquire by purchase or condemnation, when authorized by the electors, "any public utility and any water power and water rights for the use of such city within the corporate limits of said city." Defendants contend that this section, being later in the act than section 2236 and being specific, modifies the earlier and general section and constitutes an implied prohibition against establishment of water power outside the city. There is no repugnancy. Section 35. is a general grant of the power described in it to cities regardless of their charters. Section 4-f(3) grants cities the right to exercise the power described in it if they so provide by charter.

1 Comp. Laws 1929, § 4546, provides:

"Hereafter, no person, firm, corporation, or municipality shall artificially alter the stage of water or widen or deepen the channel of any watercourse, except drains established by public authority, without first securing a legal permit therefor from the commissioner or commissioners having jurisdiction over all the bridges and culverts on or over said watercourse, or the portion thereof affected by such proposed change."

It is claimed by defendants, but seems to be doubted by plaintiff, that the proposed improvement is within this statute and requires a permit from the State highway commissioner. Plaintiff has not alleged in its petition that it has such permit. In view of the mandatory character of the statute, section 4546, and the consideration that, before a prop-

erty owner may be required to defend against condemnation proceedings, the municipality should be legally authorized to make the improvement, we think the permission of the State highway commissioner, if necessary, should have been alleged in the petition. *Clay* v. *Pennoyer Creek Improvement Co.*, 34 Mich. 204; *Fox* v. *Holcomb*, 34 Mich. 298; *contra, Denver Power & Irrigation Co.* v. *Railroad Co.*, 30 Colo. 204 (69 Pac. 568, 60 L. R. A. 383). Under 1 Comp. Laws 1929, § 3795, the petition may be amended, but we cannot do so because the record does not show the fact for an amendment.

This proceeding covers only part of the land sought for the project. Other condemnation proceedings were begun for other portions. The action is under Act No. 124, Pub. Acts 1883, 1 Comp. Laws 1929, § 3784 *et seq.*, is indivisible, and a single proceeding must cover all the lands sought to be condemned. *Common Council of Houghton* v. *Huron Copper Mining Co.*, 57 Mich. 547; *Kundinger* v. *City of Saginaw*, 59 Mich. 355; *Marquette & Southeastern R. Co.* v. *Longyear*, 133 Mich. 94.

Plaintiff has moved in this court for consolidation of the several proceedings. The others are not here. It also appears from affidavits that all or some of the others have been dismissed and new condemnation proceedings begun. We cannot order consolidation.

In view of the state of the record, the order is reversed, and petition quashed, with costs.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, SHARPE, and NORTH, JJ., concurred.