CITY OF BAY CITY v. STATE BOARD OF TAX
ADMINISTRATION.

1. STATUTES—AMENDMENT—TITLE OF ACT—SALES TAX—MUNICIPAL CORPORATIONS.

It does not follow that title of sales tax act which has not been amended is not broad enough to cover act as amended whereby definition of term of "person" subject to tax was broadened to include municipal as well as private corporations (Const. 1908, art. 5, § 21; Act No. 167, § 1, Pub. Acts 1933, as amended by Act No. 313, Pub. Acts 1939).

2. SAME—TITLE OF ACT—CONSTITUTIONAL LAW.

Under the constitutional provision relative to the title of a legislative act, a title is good if it fairly indicates the general subject matter covered by the act but the title need not be sufficient in detail to constitute a table of contents or an index to the various provisions of the act (Const. 1908, art. 5, § 21).

3. MUNICIPAL CORPORATIONS—ACTIVITIES NOT NECESSARILY GOVERNMENTAL FUNCTIONS.

The mere fact that an activity is being carried on by a municipality does not of necessity render such activity a purely governmental function.

4. PUBLIC SERVICE—PROFIT.

A profit in the conduct of a public utility may be a benefit or advantage other than money return in excess of cost of operation.

5. SAME—SALES TAX—BUSINESS ACTIVITY—OWNERSHIP—PROFIT.

If, for a consideration, utilities furnish gas, electricity or steam to the residents of a municipality who desire to buy but do not furnish to those who do not wish to purchase, such utilities are carrying on a "business activity" within the meaning of the sales tax act regardless of whether the utility is municipally owned or privately owned, and also regardless of whether or not the activity contemplates a profit (Const. 1908, art. 8, § 23; Act No. 167, Pub. Acts 1933, as amended by Act No. 313, Pub. Acts 1939).

6. Municipal Corporations—Governmental Function—Profit.
   When incident to performance of a governmental function by a
   municipality a profit is derived, an activity is held to be pro-
   prietary in nature.

7. Taxation—Legislature—Public Utilities—Municipal Corpo-
   rations.
   The constitutional provisions authorizing the legislature to levy
   taxes on such property as shall be prescribed by the legislature
   are broad enough to authorize the legislature to tax the prop-
   erty of municipalities used in the conduct of a public utility
   business and also to subject the municipality to the payment of
   a specific tax on the privilege of so operating (Const. 1908,
   art. 8, § 23; art. 10, § 3; Act No. 167, Pub. Acts 1933, as
   amended by Act No. 313, Pub. Acts 1939).

8. Same—Sales Tax a Privilege Tax.
   The State sales tax is a privilege tax (Act No. 167, Pub. Acts
   1933, as amended).

9. Same—Constitutional Law—Legislature—Municipal Corpo-
   rations—Public Utilities—Privilege—Property.
   The Constitution makes no distinction between the legislature's
   power to tax a municipality's privilege of operating a public
   utility and its power to tax the property devoted to its operation
   (Const. 1908, art. 8, § 23; art. 10).

10. Same—Municipal Corporations—Property Used in Carrying
    on Proprietary Functions.
    Generally it is within the power of the State, in the absence of
    express constitutional exemption, to tax property owned and
    used by municipal corporations, especially that owned and used
    in connection with the carrying on of proprietary functions.

11. Same—Constitutional Law—Privileges.
    The fact that a privilege is granted or recognized by the Consti-
    tution may not be construed as relieving the recipients of such
    privilege from the exercise of the power of taxation as specifi-
    cally outlined in other provisions of the Constitution (Const.
    1908, art. 10).

12. Municipal Corporations—Competition with Private Enter-
    prise.
    When municipalities become competitors with private enterprise
    they should be treated no better than others operating in the
    same field, at least so far as taxation is concerned (Const. 1908,
    art. 8, § 23).

13. SAME—TAXATION OF PUBLIC UTILITIES—PROTECTION.

It is assumed that in subjecting municipal corporations to pay ment of sales tax on utility services furnished by them the legislature sought to protect private industry and private employment by keeping municipal and private competitors on a parity at least so far as taxation is concerned (Const. 1908, art. 8, § 23; Act No. 167, Pub. Acts 1933, as amended by Act No. 313, Pub. Acts 1939).

14. SAME—UTILITIES—MORTGAGES—FORECLOSURE—TAXATION.

Since there is no constitutional prohibition against State taxation of wholly proprietary municipal utilities and the Constitution does permit them to be mortgaged and the status of such utility as to taxation before and after foreclosure should be held to be the same, such utilities should be and are subject to the State's power to tax (Const. 1908, art. 8, § 23; art. 10).

15. SAME—CONSTITUTIONAL LAW—PUBLIC UTILITIES—TAXATION.

Phrase "subject to the provisions of this Constitution" introducing provision of the Constitution empowering municipal corporations to acquire and operate certain public utilities for its inhabitants does not mean that such utilities are not subject to any limitations, conditions or control by legislative enactment but instead such phrase refers to two sections immediately following which contain very pertinent provisions incident to the acquisition, ownership and operation of such utilities or else refers to all constitutional provisions which enable the State to function as a government, inclusive of provision permitting legislature to provide for an annual tax (Const. 1908, art. 8, §§ 23-25; art. 10, §§ 2, 3).

16. SAME—CONSTITUTIONAL LAW—PUBLIC UTILITIES—STATUTES.

The constitutional authorization of municipal utilities is not self-executing, and except as legislative enactments enabling cities and villages to acquire and conduct them contravene constitutional provisions, they are valid (Const. 1908, art. 8, §§ 23-25).

17. SAME—CONSTITUTIONAL LAW—LEGISLATIVE CREATURES.

Cities and villages, except as to certain express constitutional grants and limitations of power, are only creatures of legislation (Const. 1908, art. 8, § 20).

18. TAXATION—MUNICIPAL CORPORATIONS—PROPRIETARY ACTIVITY—CONSTITUTIONAL LAW.

In view of the provisions of the Constitution leaving it optional as to whether a municipality will engage in a proprietary

activity, if it elects to do so, it thereby subjects itself to the constitutional power of the State to tax, there being no express or implied constitutional provision to the contrary (Const. 1908, art. 8, §§ 23–25; art. 10, §§ 2, 3).

19. STATUTES—TITLE OF ACT—GERMANENESS OF PROVISIONS TO PURPOSE OF ACT.

Provision of sales tax act requiring procurement of a so-called license and payment of registration fee of $1 per year is germane to the main purpose of the act, stating in its title that one of its purposes was to provide for "issuance of licenses to engage in" certain business activities (Act No. 167, § 3, Pub. Acts 1933, as amended by Act No. 180, Pub. Acts 1939).

20. CONSTITUTIONAL LAW—RIGHT TO ENGAGE IN BUSINESS.

The right to engage in business is vested in every citizen and protected by the Constitution (Const. 1908, art. 2, § 16).

21. SAME—RIGHT TO ENGAGE IN BUSINESS—TAXATION—MUNICIPAL CORPORATIONS.

The constitutionally vested and protected right to engage in business is subject to the State's power of taxation and to such reasonable regulation thereof as may be an incident to such power and the constitutional right of municipal corporations who elect to carry on proprietary functions is no greater than the constitutional right of an individual to do so (Const. 1908, art. 2, § 16; art. 8, §§ 23–25; art. 10, §§ 2, 3).

22. TAXATION—SALES—REGISTRATION FEE A PRIVILEGE TAX.

The registration fee of $1 per year required by the sales tax act is a privilege tax imposed on those conducting certain businesses (Act No. 167, § 3, Pub. Acts 1933, as amended by Act No. 313, Pub. Acts 1939).

23. MUNICIPAL CORPORATIONS—LICENSES—SALES TAX ACT—INCIDENT OF POWER OF TAXATION—CONSTITUTIONAL LAW.

Requirement of sales tax act that municipalities which operate certain public utilities procure a so-called license and pay annual registration fee of $1 per year, enforceable by injunction the same as payment of the tax itself, is not a license in the strict sense but is merely an incident to the power of taxation and is not an exercise of the police power nor in contravention of constitutional provisions authorizing municipal corporations to engage in such proprietary activities (Const. 1908, art. 8, § 23; art. 10, §§ 2, 3; Act No. 167, § 3, Pub. Acts 1933, as amended by Act No. 313, Pub. Acts 1939).

24. STATUTES—SEVERANCE CLAUSE—CONSTITUTIONAL LAW.

> Sales tax act requiring that all persons, including municipal corporations, engaging in certain business activities procure a so-called license and pay $1 registration fee could be stricken under severance clause and balance of act sustained (Act No. 167, §§ 3, 27, Pub. Acts 1933, as amended by Act No. 313, Pub. Acts 1939).

> McALLISTER and WIEST, JJ., dissenting as to validity of provision requiring municipalities to operate only under license.

Appeal from Ingham; Carr (Leland W.), J. Submitted October 19, 1939. (Docket No. 150, Calendar No. 40,840.) Decided February 14, 1940.

Bill by City of Bay City, a municipal corporation, and others against State Board of Tax Administration, Walter F. Reddy, managing director, and others for a declaratory decree to determine right of State Board of Tax Administration to require license fee and payment of retail sales tax on municipal utilities. From decree for defendants, plaintiffs appeal. Affirmed.

*Joseph W. Planck, Roland M. Shivel* and *George R. Sidwell,* for plaintiffs.

*Thomas Read,* Attorney General, and *Edmund E. Shepherd, T. Carl Holbrook,* and *Gaylord N. Bebout,* Assistants Attorney General, for defendants.

NORTH, J.   The city of Bay City and 17 other cities and villages have joined as plaintiffs in the bill of complaint filed herein. They seek a declaratory decree as to the rights and duties of the parties to this suit in the particulars hereinafter stated. With the exception of two, each of plaintiffs owns and operates within its boundaries an electric light plant. The other two municipalities own and operate

within their respective boundaries artificial gas plants. In addition to its electric light plant the city of Lansing also manufactures and distributes within the city limits steam for heating purposes. The output of these municipal plants is used in part by the respective cities or villages but in the main it is sold to persons residing in such municipalities. The bill alleges and the answer admits "that all of the said municipal utilities * * * are operated to render a service to the public and are not operated for the purpose of gain or profit." The issue presented is whether the State, functioning through the State board of tax administration, has the right under Act No. 167, Pub. Acts 1933, as amended by Act No. 77, Pub. Acts 1935, Act No. 180, Pub. Acts 1939, and Act No. 313, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 3663–1 *et seq.*), to require each of these plaintiffs to obtain a license and pay a license fee as a condition of operating its municipal utility and to impose a tax on the retail sales of such municipal utility. Plaintiffs allege that the cited statutes, particularly amendatory Act' No. 313, Pub. Acts 1939, violate their constitutional rights for the following reasons:

"(1) Municipal utilities are not adequately included in or designated by the title of the act, and the title of the act is not broad enough to cover their operations and functions, which are not business activities.

"(2) The legislature cannot tax the privilege to operate municipal utilities granted to municipal corporations by the State Constitution.

"(3) The legislature cannot require municipalities to take out a license to operate their municipal utilities."

Plaintiffs have appealed from a decree entered in the circuit court by which the statutory enactments here involved were held to be valid.

The constitutional provision (Const. 1908, art. 8, § 23) under which cities and villages are authorized to acquire, own and operate public utilities in part reads:

"Subject to the provisions of this Constitution, any city or village may acquire, own and operate, either within or without its corporate limits, public utilities for supplying water, light, heat, power and transportation to the municipality and inhabitants thereof."

Prior to the 1939 amendments to Act No. 167, Pub. Acts 1933, we held that the general sales tax provided in the act, as then amended by Act No. 77, Pub. Acts 1935, was not applicable to sales of gas and electricity by municipal utilities. *City of Wyandotte* v. *State Board of Tax Administration,* 278 Mich. 47. In the main, decision was based on the definition of the term "person" contained in section 1, subdivision (a), of the 1933 act. Under the then existing statutory definition of this term as then used in the act we held that it did not include municipal corporations, and that therefore retail sales of gas or electricity produced by municipally owned and operated plants were not subject to the sales tax. However, in this particular the 1933 act was amended and broadened by Act No. 313, Pub. Acts 1939, hereinafter quoted in part. Except as it refers to amendments, there has been no change in the title to this act as originally passed in 1933; and appellants contend that the title is not broad enough to cover the amended act. The title and pertinent portions of the amendatory act read:

"An Act to amend sections 1, 4, 4a, 6, 8, 9, 11, 13, 14, 17, 18 and 19 of Act No. 167 of the Public Acts of 1933, entitled 'An Act to provide for the raising of additional public revenue by prescribing certain spe-

cific taxes, fees, and charges to be paid to the State for the privilege of engaging in certain business activities; to provide, incident to the enforcement thereof, for the issuance of licenses to engage in such occupations; to provide for the ascertainment, assessment and collection thereof; to appropriate the proceeds thereof; to establish a State board of tax administration; to make an appropriation for carrying out the provisions of this act; and to prescribe penalties for violations of the provisions of this act,' as amended by Act No. 77 of the Public Acts of 1935.    *    *    *

"SECTION 1. Definitions. That when used in this act:

"(a)   The term 'person' includes any individual, firm, copartnership, joint adventure, association, *municipal* or private corporation whether organized for profit or not, company, estate, trust, or any other group or combination acting as a unit, and the plural as well as the singular number, unless the intention to give a more limited meaning is disclosed by the context.

"(b)   The term 'sale at retail' means any transaction by which is transferred for consideration the ownership of tangible personal property, when such transfer is made in the ordinary course of the transferor's business and is made to the transferee for consumption or use other than for consumption or use in industrial processing or agricultural producing, or for any other purpose than for resale in the form of tangible personal property:    *    *    *

"(c)   The term 'sale at retail' includes sales of electricity, natural and/or artificial gas and steam when made to the consumer or user for consumption or use rather than for resale: *Provided, however,* That the term 'sale at retail' shall not include the sale of water through water mains."

By its amendment of section 1, subdivision (a), clearly the legislature intended to and did broaden

the body of the act so that it now expressly includes in the term "person" municipal corporations, as well as private corporations. But it does not follow that the title, which remained unchanged, does not cover the act as amended, as is contended by appellants. *Gallie* v. *Detroit Auto Accessory Co.*, 224 Mich. 703.

In numerous decisions of this court it has held in substance that the title to an act is good if it fairly indicates the general subject matter covered by the act; and that the constitutional provision (Const. 1908, art. 5, § 21) does not require a title sufficient in detail to constitute a table of contents or an index to the various provisions of the act. *Mackin* v. *Detroit Timkin Axle Co.*, 187 Mich. 8; *Seifert* v. *Buhl Optical Co.*, 276 Mich. 692; *Attorney General, ex rel. Eaves,* v. *State Bridge Commission,* 277 Mich. 373; *In re Lewis' Estate,* 287 Mich. 179.

The amended act here involved according to its title imposes a specific tax "for the privilege of engaging in certain *business activities."* Appellants assert that the "operations and functions" of their respective municipal utilities "are not business activities" within the title of the act. Appellants stress the argument that such activities are carried on as a service to the public and not for the purpose of making a profit; and in their brief they have cited many cases in the light of which appellants urge that these activities do not constitute *"business* activities" since they are not carried on for profit. It is clear that the mere fact an activity is being carried on by a municipality does not of necessity render such activity a purely governmental function, *Taber* v. *City of Benton Harbor,* 280 Mich. 522; and a profit may be a benefit or advantage other than money return in excess of cost of operation. For example, as noted in appellants' brief, the city of Lansing by reason of operating its electric light

plant obtains its street lighting gratis. This only means that the profit on the electric current sold to private customers is taken to pay for the electric current used by the city for street lighting purposes, instead of collecting the cost of this public service from the city taxpayers. Even the making of a livelihood is but a form of benefit or advantage which might well be considered a "profit." We are not prepared to agree that in the sense it is used in this statute, a "business activity" is not being conducted except it is for profit. If for a consideration utilities furnish such commodities as are here involved to the residents of the municipality who desire to buy but do not furnish to those who do not wish to purchase, such utilities are carrying on a "business activity" within the meaning of our statute regardless of whether the utility is municipally owned or privately owned, and also regardless of whether or not the activity contemplates a profit. *State Tax Commission* v. *City of Logan,* 88 Utah, 406 (54 Pac. [2d] 1197); *City of Phoenix* v. *State, ex rel. Conway,* 53 Ariz. 28 (85 Pac. [2d] 56); *City of Tacoma* v. *State Tax Commission,* 177 Wash. 604 (33 Pac. [2d] 899); *City of Lakeland* v. *Amos,* 106 Fla. 873 (143 South. 744). In the last cited case the court said:

"The furnishing by a municipal corporation of electricity or gas to private parties or for non-governmental use is not a governmental function, but a corporate business or occupation engaged in by virtue of a statutory privilege right granted for that purpose, for the conduct of which business or occupation a license or excise tax may be imposed upon the municipal corporation."

The test of whether there is a profit has been held to be controlling when the activity is primarily the

carrying on of a governmental function. When incident to performance of a governmental function a profit is derived then the activity is held to be proprietary in nature. In *Foss* v. *City of Lansing,* 237 Mich. 633 (52 A. L. R. 185), the syllabus reads:

"Where there is an incidental profit to a municipality in collecting and disposing of garbage, by feeding it to hogs, it is liable for the negligence of its employee in operating a truck while engaged in collecting such garbage, although in so doing the municipality is performing a governmental function."

That appellants are in error in their contention that their "operations and functions" are not within the meaning of the term "business activities" or "business" as used in the title and body of the 1939 amendatory act is clearly indicated by section 1, subdivision (h), of the act which reads:

"The term 'business' includes all activities engaged in by any person or caused to be engaged in by him with the object of gain, benefit or advantage, either direct or indirect."

We are not in accord and cannot sustain appellants' contention that:

"Municipal utilities are not adequately included in or designated by the title of the act, and the title of the act is not broad enough to cover their operations and functions, which [appellants assert] are not business activities."

Other questions presented by this appeal are so clearly disposed of in the opinion filed by the circuit judge that we adopt it and quote it in part:

"It is pointed out [by appellants] that section 23 of article 8 of the present State Constitution grants

to cities and villages the right to acquire and to own and operate public utilities and it is insisted that exemption from taxation in the exercise of such privilege is impliedly granted by the fundamental law. On behalf of the defendants it is denied that any such inference or implication is permissible and that the matter of levying a tax either on the property of the municipality devoted to utility service, or on the privilege of operating, is wholly discretionary with the legislature.    *    *    *

"The provisions of the State Constitution with reference to the taxation of property obviously confer broad powers on the legislative department. Subject to restrictions as to uniformity it is declared in section 3 of article 10 that 'taxes shall be levied on such property as shall be prescribed by law.'    *    *    *

"It would seem that the language used in the Constitution is sufficiently broad to authorize the legislature to provide for the taxation of the property of municipalities, used in the conduct of a public utility business, and also to subject the municipality to the payment of a specific tax on the privilege of so operating. That the sales tax is a privilege tax was expressly held in *C. F. Smith Co.* v. *Fitzgerald,* 270 Mich. 659, 686.

"The suggestion has been made that the privilege of operating a utility is not subject to taxation, even though the property devoted to the operation may be taxed. It does not seem to me, however, that any satisfactory basis for such argument is afforded by the pertinent provisions of the Constitution. Had it been intended to restrict the powers of the legislature with reference to either form of taxation it would seem that specific provision to that end would have been made. The failure to do so, especially in view of the broad powers as to taxation conferred by Const. 1908, art. 10, must be regarded as significant.

"The rule seems to be generally recognized that it is within the power of the State, in the absence of express constitutional exemption, to tax property owned and used by municipal corporations. While the general rule is that such property used in the performance of governmental functions is ordinarily relieved from taxation by express provision of either Constitution or statute, such is not the case as to property owned and used in connection with the carrying on of so-called proprietary functions. The general situation is summarized in 61 C. J. p. 420, as follows:

" 'Municipally-owned works and utilities are not property used in performing delegated governmental functions and immune from taxation on that ground. Such property being of a taxable nature can only be made exempt by Constitution or statute. In jurisdictions, therefore, where no property is exempt but that expressly enumerated in Constitution or statute, and property owned by municipal corporations is not included in the enumeration, the property of municipally-owned works and utilities is not exempt, nor is such property exempt if not within the terms of the exemption provision.'

"The Supreme Court of Michigan, in the case of *City of Traverse City* v. *Blair Township,* 190 Mich. 313 (Ann. Cas. 1918 E, 81), held that an electric light and power plant owned and operated by a municipality was exempt from taxation by virtue of the statute. The following significant language was used:

" 'The right of the legislature either to tax or exempt such public property is not open to question.' * * *

"In *City of Big Rapids* v. *Mecosta Board of Supervisors,* 99 Mich. 351, the court took occasion to point out that the then Constitution of the State contained no provision on the matter of exemption from taxation, the implication being that the power of the legislature was not restricted. It occurs to me that the same observation may be made with reference to the present State Constitution. It was further suggested by the court that, aside from express exemptions certain exemptions may be implied by

law as to property 'owned and held by the State, its political subdivisions, and its municipalities for governmental purposes.' Patently, property held by municipalities in connection with a public utility operation of the character involved in the instant case is not within the scope of the implied exemption suggested by the Supreme Court, nor does it appear that the privilege of carrying on such an operation is subject to an implied exemption from the payment of a specific privilege tax.

"The fact that a privilege is granted or recognized by the Constitution may not fairly be construed as relieving the recipients of such privilege * * * from the exercise of the power of taxation as specifically outlined in other provisions of the Constitution. The authorities above referred to, and others of like import, indicate that any such theory is untenable. In view of the specific language of our present Constitution, and the decisions of our Supreme Court, I see no escape from the conclusion that the matter is one concerning which the legislature of the State has discretionary power."

In connection with the foregoing it may be noted that the circuit judge cited *City of Phoenix* v. *State, supra,* wherein the municipal utility involved was authorized by the State Constitution, but notwithstanding the authority for owning and operating the utility was in the State Constitution the court held that the legislature had the power to tax. The court said:

"There is nothing in these sections of the Constitution indicating an intention to exempt municipalities that engage in an industrial pursuit, business, or enterprise from paying a tax on their products, or income, or service. It would seem that when municipalities become competitors with private enterprise they should be treated no better than others operating in the same field. The general rule

is that municipalities are subject to the same liabilities as private corporations, or individuals, except when they are exercising purely governmental functions. (Citing cases)''

. It is only fair to assume that as a matter of public policy the Michigan legislature in enacting the statutory provisions here involved sought in a measure to protect private industry and private employment by keeping them, so far as taxation is concerned, on a parity with municipally owned utilities which, going outside the performance of purely governmental functions, become competitors of others privately engaged in like activities. When municipal utilities so function, they should be governed by and subject to the same rules as private individuals or business corporations, at least so far as taxation is concerned. As bearing somewhat upon this phase of the instant case, notwithstanding the question of taxation is not involved, see *Andrews* v. *City of South Haven,* 187 Mich. 294 (L. R. A. 1916 A, 908, Ann. Cas. 1918 B, 100).

It is rather persuasive to note that the Constitution of 1908, art. 8, § 24, provides that the municipality may issue mortgage bonds on its utility. Surely it would be a strange provision of law, either constitutional or statutory, that would authorize a municipality to mortgage a portion of its power to exercise governmental functions. It would seem to follow that the pertinent constitutional provisions simply empower cities and villages to engage in proprietary activities. And touching the matter of the State's power to tax such activity, the question at once arises, is this activity still exempt from taxation when in event of foreclosure it becomes the private property of the purchaser on foreclosure sale? Its status after foreclosure in this particular should be

held to be the same as prior to foreclosure; but a strange result would follow if, after foreclosure and when the municipal utility becomes the property of the private bondholders or other purchaser, it was exempt from taxation notwithstanding other corporate or privately owned utilities of like character were subject to taxation. There being no express constitutional provision prohibiting the State from taxing such municipal utilities, it would seem to follow that, being wholly proprietary in character, they should be and are subject to the State's power to tax.

Appellants' brief stresses: "It must be borne in mind that the Constitution expressly states that this power and the exercise thereof is 'subject to the provisions of this Constitution,' art. 8, § 23;" and from this appellants conclude that therefore utilities operated by municipalities are not subject to any limitations, conditions or control by legislative enactments. We think this conclusion is erroneous; and that instead the Constitution of 1908, art. 8, § 23, must be read in connection with sections 24 and 25 which contain very pertinent provisions incident to the acquiring, owning and operating of municipal utilities, and that it is to those subsequent sections reference is made by the introductory phrase of section 23, "subject to the provisions of this Constitution." Or, as pointed out by appellees, "subject to the provisions of this Constitution" may well be construed to mean subject to all constitutional provisions which enable the State to function as a government, including article 10 from which we quote the following:

"SEC. 2. The legislature shall provide by law for an annual tax sufficient with other resources to pay the estimated expenses of State government. * * *

"SEC. 3. The legislature shall provide by law a uniform rule of taxation, except on property paying specific taxes, *and taxes shall be levied on such property as shall be prescribed by law.*"

We are not in accord with the interpretation placed by appellants upon the phrase "subject to the provisions of this Constitution."

The constitutional authorization of municipal utilities is not self-executing. Instead, numerous legislative enactments have been found necessary to provide the means and method of enabling cities and villages to acquire and conduct such utilities. For example, see 1 Comp. Laws 1929, §§ 1684–1692, 2100–2122, 2231–2237, as amended (Stat. Ann. §§ 5.1420–5.1428, 5.1895–5.1917, 5.2074–5.2080). In this connection, see *City of Allegan* v. *Iosco Land Co.,* 254 Mich. 560. Except such legislative enactments contravene constitutional provisions, they are valid. *Stanhope* v. *Village of Hart,* 233 Mich. 206, upon which appellants rely, is by no means as broad in its decision as appellants infer, and does not sustain their claim that article 8, §§ 23, 24 and 25, of the Constitution are self-executing. In asserting freedom or exemption from legislative regulation in the exercise of their governmental and proprietary functions, these cities and villages seem to overlook the fact that, except as to certain express constitutional grants and limitations of power, they are only creatures of legislation. Our Constitution provides:

"The legislature shall provide by a general law for the incorporation of cities, and by a general law for the incorporation of villages." Art. 8, § 20.

Appellants point out that somewhat similar constitutional provisions in the State of Ohio have been held to be self-executing. And appellants make sub-

stantially the same claim as to the Constitution and decisions of California. The Ohio constitutional provision is clearly broader than ours. We think it is because of this, and only because of this, that the Ohio courts have held the constitutional provisions of that State to be self-executing. The California constitutional provisions are very similar to those of this State; but we fail to find any of the California decisions holding that the provisions of its Constitution are self-executing or that municipal utilities are not subject to taxation in that State. In this connection it may be noted that the California sales tax act expressly exempts municipal utilities furnishing gas, electricity or water from its provisions. Because of the above-noted circumstances we conclude that appellants' position in this case is not materially supported by the decisions of either Ohio or California. None of the decisions from either State go squarely to the point of the right of the State to impose a privilege tax incident to the operation of a municipally-owned utility. Further, we think it may be said that the right of the State to impose a privilege tax on municipal utilities is not necessarily controlled by the question of whether our constitutional provisions as to municipal utilities are or are not self-executing. Instead of being mandatory, the Michigan constitutional provisions leave it entirely optional with a municipality as to whether it will or will not engage in proprietary activities. It would seem to be a sound proposition of law that when a municipality elects to engage in a proprietary activity it thereby subjects itself to the constitutional power of the State to tax, there being no express or implied constitutional provision to the contrary.

While it is obviously of very minor importance in this case, appellants urge the point that: ''The

legislature cannot require municipalities to take out a license to operate their municipal utilities.'' Requiring procurement of a so-called license and the payment of a ''registration fee'' of $1 per year is merely an incident to the legislative plan for effective administration of the sales tax law. The title of the act states one of its purposes is to provide ''for the issuance of licenses to engage in such occupation.'' Obviously this requirement is germane to the main purpose of the act. The argument against the right of the legislature to require a so-called license is that, since by constitutional provision municipalities are permitted to own and operate public utilities, this right cannot be restricted by legislative enactment requiring a license and payment of a registration fee. It may be conceded, if operating these public utilities were the exercise of a purely governmental function, the argument would be sound; but operating such utilities is proprietary in character, not purely governmental. As soon as municipalities enter the field of proprietary activities, they subject themselves to the same right of regulation as private entities so engaged, insofar as payment of taxes is concerned. The Constitution vests in every citizen the right to engage in business. Such right is a property right and is protected by the Constitution of 1908, art. 2, § 16. Notwithstanding this constitutional right, in carrying on his business activities the individual is subject to the State's power of taxation and to such reasonable regulations of his business as may be incident to the effective enforcement of this power of taxation. The same is true of municipalities when of their own volition they elect to carry on proprietary activities. The constitutional right of municipalities in that particular is no greater than the constitutional right of an individual.

Further, it should be noted that the so-called *license* required in the sales tax statute is not, strictly speaking, a license. Instead it is rather a provision for a certificate of enrollment or registration to be obtained by one engaged in a business requiring payment of the sales tax. Requiring this registration certificate is a material aid, if not indispensable, to the effective enforcement of the sales tax law. Its requirement is in no sense an exercise of the police power; but instead it is the exercise of a power possessed by the State incident to its right to tax. The fee of $1 is referred to in the act as a "registration fee." Act No. 167, § 3, Pub. Acts 1933, as amended by Act No. 180, Pub. Acts 1939. Its annual payment is but an item which makes up the total of the tax imposed. In *City of Wyandotte* v. *State Board of Tax Administration,* 278 Mich. 47, we said:

"A registration fee of one dollar per year as a *privilege tax* is imposed on those conducting such business."

The provision made in the sales tax act for enforcing by injunction the requirement that one subject to the sales tax shall obtain the certificate of registration and annually pay $1 therefor is the same as the provision in the act for enforcing by injunction proceedings the payment of the tax itself. Act No. 167, § 16, Pub. Acts 1933 (Stat. Ann. § 7.537). It therefore seems clear that the requirement for a license, which is no more than a registration certificate, and the annual payment of $1 therefor is a mere incident to and a part of the privilege tax imposed, not a license in the strict sense. The distinction is more particularly pointed out by Justice COOLEY in *Youngblood* v. *Sexton,* 32 Mich. 406, 418 (20 Am. Rep. 654). Appellants' contention that

the statutory provision for the so-called license and "registration fee" is in violation of their constitutional rights is not tenable.

Even if the license provision of the act were invalid, which we do not hold, section 3, which contains these provisions, could be stricken under the severance clause section * and the balance of the act sustained. But, holding as we do that municipalities in operating public utilities are subject to a privilege tax, we find no reason why, incident to the administration of the legislative plan for enforcing the law, a so-called license may not be required. Such is the holding in *City of Phoenix* v. *State, supra,* and *City of Lakeland* v. *Amos, supra.*

The decree entered in the circuit court is affirmed, with costs to appellees.

BUSHNELL, C. J., and SHARPE, POTTER, CHANDLER, and BUTZEL, JJ., concurred with NORTH, J.

WIEST, J. (*concurring in part*). The tax is valid but the provision requiring municipalities to operate only under license is void.

The Constitution of 1908, art. 8, § 23, empowers cities and villages to acquire, own and operate public utilities of the nature here involved, and the legislature is without power to restrict such operations to municipalities securing a license as required by Act No. 167, § 3, Pub. Acts 1933, as amended by Act No. 180, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 3663-3). Leave expressly granted by the Constitution to municipalities cannot be restricted by legislation to licensees of the State board of tax administration.

McALLISTER, J., concurred with WIEST, J.

---

* Act No. 167, § 27, Pub. Acts 1933 (Stat. Ann. § 7.548).— REPORTER.